1  KRISTIN E. HUTCHINS, Bar No. 184429
   DEBORAH O. OLALEYE, Bar No. 315838
2  LITTLER MENDELSON, P.C.
   333 Bush Street, 34th Floor
3  San Francisco, California  94104
   Telephone:   415.433.1940
4  Facsimile:   415.399.8490
   Email: khutchins@littler.com
5          dolaleye@littler.com

6  Attorneys for Defendant
   SERVICE WEST, INC.
7

8  MARK J. DIVELBISS, Bar No. 142084
   LAW OFFICES OF MARK J. DIVELBISS
9  5938 Rincon Drive
   Oakland, CA 94611
10 Telephone:   (510) 339-1755
   Email:  mark@mjd-law.com

11 Attorneys for Defendant
   RUDOLPH AND SLETTEN, INC.
12

13              UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15 | GEORGETTE G. PURNELL,              | **Lead Case:  4:18-cv-01402-PJH**
16 |          Plaintiff,                | Consolidated with 4:18-cv-01404-PJH
   |
17 |     v.                             | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
18 | RUDOLPH AND SLETTEN INC.,          |
   |          Defendant.                |
19 |                                    |
20 |                                    | Date:      September 25, 2019
   |                                    | Time:    1:30 P.M.
21 |                                    | Courtroom: 3
   |                                    | Judge:  Hon. Phyllis J. Hamilton
22 |                                    |
23 | GEORGETTE G. PURNELL,              | R&S Complaint Filed: March 2, 2018
   |                                    | SW Complaint Filed: March 2, 2018
   |          Plaintiff,                |
24 |                                    |
25 |     v.                             |
   |
26 | SERVICE WEST, INC.,                |
   |          Defendant.                |
27
28

                                    1                    Case No.  4:18-cv-01402-PJH
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on September 25, 2019, at 1:30 p.m. at the United States District Court for the Northern District of California, Courtroom 3, 3rd Floor, at 1301 Clay Street, Oakland, California 94612, before the Hon. Phyllis J. Hamilton, Defendants Service West, Inc. ("Service West") and Rudolph and Sletten, Inc. ("Rudolph & Sletten") (collectively, "Defendants") will move the Court, pursuant to Federal Rule of Civil Procedure 56, for an order entering summary judgment, or in the alternative, partial summary judgment, against Plaintiff Georgette G. Purnell ("Plaintiff") on each and all of Plaintiff's causes of action.

Defendants bring this motion the grounds that, as to all of Plaintiff's causes of action, there are no genuine issues as to any material fact and Defendants are therefore entitled to judgment as a matter of law. Specifically, Defendants seek summary judgment, or in the alternative, partial summary judgment, because:

Plaintiff's claims alleging hostile work environment harassment based on national origin, sex, and race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C § 2000e *et seq.*, fail as a matter of law because: (1) Plaintiff was not subjected to "severe or pervasive" conduct or an abusive environment because of her national origin, sex, or race; and (2) Defendants took reasonable steps to prevent harassment, and promptly took appropriate remedial action in response to Plaintiff's allegations of harassment.

Plaintiff's claim alleging retaliation in violation of Title VII fails as a matter of law because Plaintiff has not and cannot establish a causal connection between the alleged protected activity in which she participated and any adverse employment action. Furthermore, Plaintiff's employment was terminated for legitimate, non-retaliatory, and non-pretextual reasons.

Plaintiff's claim for punitive damages fails because she cannot establish that Defendants acted with malice or reckless indifference toward her federally protected rights.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities in support thereof, the Declarations of Ruben DeLeon, Terence Huie, Julie Jacobs, Jennifer Farinha, and Deborah O. Olaleye and all exhibits thereto, all pleadings and papers on file in

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco CA  94104
415.433.1940

2.

Case No.  4:18-cv-01402-PJH

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    this action, and such evidence and argument as counsel and Plaintiff in Pro Per Purnell may present

2    to the Court at the hearing on this Motion.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco CA 94104
415 433 1940

3.                          Case No.  4:18-cv-01402-PJH
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**TABLE OF CONTENTS**

PAGE

I.   INTRODUCTION ......................................................................................... 10

II.  STATEMENT OF THE ISSUES TO BE DECIDED .................................... 11

III. STATEMENT OF FACTS ............................................................................ 12

    A.   Defendants Service West and Rudolph & Sletten ...................................... 12

        1.   Service West, Inc ................................................................................. 12

        2.   Rudolph and Sletten, Inc ..................................................................... 12

    B.   Plaintiff's Initial Employment With Service West And Subsequent Transfer To Rudolph & Sletten ....................................................................................... 13

    C.   Plaintiff's Pattern Of Unexcused Work Tardiness And Absences Began Shortly After Being Hired .......................................................................... 13

    D.   Mike Jones' Complaint To Human Resources About Plaintiff, Plaintiff's Counter-Complaint Against Jones, And The Subsequent Investigation ................... 14

    E.   Plaintiff's Continued Workplace Tardiness During And After Rudolph & Sletten Human Resources' Investigation ................................................................. 15

    F.   The End Of Plaintiff's Employment With Defendants ............................................. 16

        1.   Plaintiff's Last Day of Work with Rudolph & Sletten ................................. 16

        2.   Termination Of Plaintiff's Employment with Rudolph & Sletten ................. 16

IV.  LEGAL STANDARD FOR SUMMARY JUDGMENT ............................. 18

V.   LEGAL ARGUMENT .................................................................................. 19

    A.   Because Plaintiff Cannot Establish Any Of The Elements Of A Claim For Hostile Work Environment Harassment Based On National Origin, Her Claim Fails ............................................................................................................. 19

        1.   Plaintiff's Factual Claims Re Alleged Hostile Work Environment Harassment Based On National Origin .......................................................... 19

        2.   Even If Taken As True, The Facts Alleged By Plaintiff Do Not Support A Claim For Hostile Work Environment Based On National Origin As A Matter Of Law .............................................................. 19

    B.   Because Plaintiff Cannot Establish Any Of The Elements Of A Claim For Hostile Work Environment Harassment Based On Her Sex, Her Claim Fails .......... 20

        1.   Plaintiff's Factual Claims Re Alleged Hostile Work Environment Harassment Based On Her Sex ..................................................................... 20

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

4.

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

2.    Even If Taken As True, The Facts Alleged By Plaintiff Do Not Support A Claim For Hostile Work Environment Sexual Harassment As A Matter Of Law ............................................................................... 20

C.    Because Plaintiff Cannot Establish Any Of The Elements Of A Claim For Hostile Work Environment Harassment Based On Her Race, Her Claim Fails ........ 22

   1.    Plaintiff's Factual Claims Re Alleged Hostile Work Environment Harassment Based On Her Race ................................................................ 22

   2.    Even If Taken As True, The Facts Alleged By Plaintiff Do Not Support A Claim For Hostile Work Environment Racial Harassment As A Matter Of Law ............................................................................... 23

      a.    Plaintiff's Subjective Belief That Being Told That She Still Had Her Job Was Due To An Industry Connection Does Not Support A Claim That It Was Racial Harassment .............................. 23

      b.    Comments That Were Not Directed At Plaintiff Or That Were Made Outside Her Presence Cannot Support A Claim Of Harassment ...................................................................................... 24

      c.    Jones Isolated Use Of The "N-Word" Directed Toward Plaintiff Does Not Constitute Actionable Harassment ...................... 25

   3.    Even If Plaintiff Could Establish A Prima Facie Case Of Hostile Work Environment Harassment Based on Race, Defendants Are Not Liable ........ 26

      a.    When Apprised Of Mike Jones' Alleged Harassment, Defendants Took Prompt Effective Remedial Action ....................... 26

      b.    To The Extent Plaintiff Believed She Experienced Racial Harassment By Marshall, Her Claim Fails Because She Did Not Avail Herself Of The Preventative And/Or Corrective Opportunities Set Forth In Defendants' Policies ............................. 27

D.    Plaintiff's Retaliation Claim Fails For Myriad Reasons ............................................. 28

   1.    Plaintiff's Factual Claims Re Alleged Retaliation .......................................... 28

   2.    Even If Taken As True, The Facts Alleged By Plaintiff Do Not Support A Prima Facie Case Of Retaliation .................................................... 29

      a.    Apart From Plaintiff's Termination, The Acts Of Alleged Retaliation Do Not Constitute Adverse Actions ................................. 29

      b.    There Is No Causal Connection Between Plaintiff's Complaints About Mike Jones And Her Separation From Employment .............. 31

   3.    Defendants Have Articulated A Legitimate, Non-Retaliatory Reason For The Termination Of Plaintiff's Employment ......................................... 31

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415 433 1940

5.

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF CONTENTS
### (CONTINUED)

PAGE

4.   Plaintiff Cannot Establish That Defendants' Proffered Reason For Her Termination Is Pretext ................................................................. 32

E.   Because Plaintiff Cannot Demonstrate Defendants Acted With Malice Or Reckless Indifference Towards Her, And Because Defendants Made Good Faith Efforts To Comply With Title VII, Plaintiff's Punitive Damages Claim Fails............................................................................................... 33

VI.   CONCLUSION.................................................................................................... 34

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alvarado v. FedEx Corp.*,
   2006 WL 644875 (N.D. Cal. Mar. 13, 2006) ...................................................26

*Anderson v. City & Cty. of San Francisco*,
   169 F. Supp. 3d 995 (N.D. Cal. 2016) .......................................................30

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).........................................................................18

*Barnett v. Dep't of Veterans Affairs*,
   153 F.3d 338 (6th Cir. 1998) .................................................................21

*Block v. Solis*,
   436 F. App'x 777 (9th Cir. 2011) ............................................................32

*Brooks v. City of San Mateo*,
   229 F. 3d 917 (9th Cir. 2000) ................................................................24

*Burlington Indus. v. Ellerth*,
   524 U.S. 742 (1998)......................................................................21, 27

*Cavalier v. Clearlake Rehab. Hosp., Inc.*,
   306 F. App'x 104 (5th Cir. 2009) ............................................................24

*Celotex Corp.* v. *Catrett*,
   477 U.S. 317 (1986).........................................................................18

*Chan v. Ramada Plaza Hotel*,
   2003 WL 22159061 (N.D. Cal. Sept. 12, 2003) .............................................18

*Clark County Sch. Dist. v. Breeden*,
   532 U.S. 268 (2003).........................................................................21

*Cornwell v. Electra Cent. Credit Union*,
   439 F.3d 1018 (9th Cir. 2006) ...............................................................23

*Dupree v. Apple, Inc.*,
   2017 WL 2617978 (N.D. Cal. June 16, 2017), *aff'd*, 715 F. App'x 798 (9th Cir.
   2018) ........................................................................................23

*Johnson v. TCB Constr. Co.*,
   334 F. App'x 666 (5th Cir. 2009) ............................................................24

Case No. 4:18-cv-01402-PJH

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco  CA  94104
415 433 1940

*Knight v. Brown*,
   485 F. App'x 183 (9th Cir. 2012) ...................................................................................24

*Kolstad v. American Dental Ass'n*,
   527 U.S. 526 (1999) ........................................................................................................33

*Kriss v. Sprint Communications Co. Ltd. P'ship*,
   58 F.3d 1276 (8th Cir. 1995) ..........................................................................................21

*Lewis v. Redding Med. Ctr.*,
   21 F.3d 1114, 1994 WL 123862 (9th Cir. 1994) ............................................................26

*Lewis v. Wilkie*,
   909 F.3d 858 (7th Cir. 2018) ..........................................................................................30

*Manatt v. Bank of Am., NA*,
   339 F.3d 792 (9th Cir. 2003) ..........................................................................................25

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ........................................................................................................18

*Montgomery v. Sears Roebuck & Co.*,
   720 F. Supp. 2d 738 (W.D. La. 2010) ............................................................................24

*Nilsson v. City of Mesa*,
   503 F.3d 947 (9th Cir. 2007) ....................................................................................28, 32

*Oncale v. Sundowner Offshore Services, Inc.*,
   523 U.S. 75 (1998) ..........................................................................................................23

*Rogers v. EEOC*,
   454 F.2d 234 (5th Cir. 1971), *abrogated on other grounds by EEOC v. Shell Oil
   Co.*, 466 U.S. 54 (1984) ..................................................................................................25

*Schuler v. Chronicle Broad. Co. Inc.*,
   793 F.2d 1010 (9th Cir. 1986) ........................................................................................23

*Smith v. Cty. of Humboldt*,
   240 F. Supp. 2d 1109 (N.D. Cal. 2003) ........................................................................26

*Splunge v. Shoney's, Inc.*,
   97 F.3d 488 (11th Cir. 1996) ..........................................................................................33

*Stevens v. Rice*,
   1996 WL 207163 (N.D. Cal. Apr. 18, 1996) ..................................................................18

*Swenson v. Potter*,
   271 F.3d 1184 (9th Cir. 2001) ........................................................................................26

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco CA 94104
415 433 1940

8.

Case No. 4:18-cv-01402-PJH

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Thornhill Publishing Co., Inc. v. GTE Corp.*,
   594 F.2d 730 (9th Cir. 1979) ............................................................................................18

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
   865 F.2d 1539 (9th Cir. 1989) ..........................................................................................18

*Vance v. Ball State Univ.*,
   570 U.S. 421 (2013)...................................................................................................26, 27

*Vasquez v. County of L.A.*,
   349 F.3d 634 (9th Cir. 2003) ............................................................................................23

*Villiarimo v. Aloha Island Air, Inc.*,
   281 F.3d 1054 (9th Cir. 2002) ..........................................................................................28

**Federal Statutes**

42 U.S.C.
   § 1981a(b)(1) ...................................................................................................................33

Civil Rights Act of 1964 Title VII.............................................................................*passim*

**Other Authorities**

Fed. R. Civ. Proc. 56(a) .........................................................................................................18

Rudolph & Sletten's "Harassment, Discrimination and Retaliation Prevention Policy" ...................12

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

9.

Case No.  4:18-cv-01402-PJH

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Plaintiff Georgette G. Purnell was employed by Defendants Service West and Rudolph & Sletten as a Drywall Apprentice.  After less than a year, she was terminated from Rudolph & Sletten for a series of no-call/no-show absences and failure to attend two scheduled meetings with Human Resources.  Plaintiff alleges that Defendants discriminated against her on the basis of her national origin, sex, and race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").  Plaintiff further alleges that after she complained about harassment, Defendants retaliated against her in a variety of ways and ultimately terminated her employment.  Each of these claims fails as a matter of law.

Plaintiff's causes of action alleging hostile work environment harassment are largely based upon her contention that her former coworker, a non-supervisory employee, made derogatory remarks regarding her sex and race. However, when Plaintiff reported the coworker's conduct, Defendants promptly and thoroughly investigated her allegations, and administered appropriate remedial action.  During her deposition, Plaintiff asserted new allegations of "harassment" by other coworkers about which she did not inform Defendants while employed, or even allege in her Complaints against Defendants.  These claims also fail for a variety of reasons.

Additionally, Plaintiff claims that after she reported the alleged harassment, Defendants retaliated against her by making errors on her paychecks, denying her overtime, repeatedly changing her supervisors and work start times, and ultimately terminating her employment.  However, Plaintiff has produced zero evidence that links the alleged changes in working conditions or termination to the complaint she initiated against her coworker.

There is undisputed evidence, however, that Defendants attempted to contact and meet with Plaintiff during her last month of employment to address her workplace concerns, and her recent spate of no-call/no-show absences. Plaintiff refused to respond to Defendants' attempts to contact her and failed to show for not one, but *two*, scheduled meetings with Human Resources. Ultimately, Plaintiff's employment was terminated because she had a series of "no-call/no-shows" (missed workdays) and failed to communicate whether she intended to return to work.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco CA 94104
415 433 1940

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

For these reasons, and as discussed in further detail below, Defendants are entitled to summary judgment on Plaintiff's claims as a matter of law.

## II.   STATEMENT OF THE ISSUES TO BE DECIDED

**Issue No. 1:**

Whether Defendants are entitled to summary judgment on Plaintiff's claim[1] alleging hostile work environment harassment based on national origin in violation of Title VII because Plaintiff cannot demonstrate genuine issues as to any material fact and the claim as alleged fails as a matter of law.

**Issue No. 2:**

Whether Defendants are entitled to summary judgment on Plaintiff's claim alleging hostile work environment harassment based on sex in violation of Title VII because Plaintiff cannot demonstrate genuine issues as to any material fact and the claim as alleged fails as a matter of law.

**Issue No. 3:**

Whether Defendants are entitled to summary judgment on Plaintiff's claim alleging hostile work environment harassment based on race in violation of Title VII because Plaintiff cannot demonstrate genuine issues as to any material fact and the claim as alleged fails as a matter of law.

**Issue No. 4:**

Whether Defendants are entitled to summary judgment on Plaintiff's claim alleging retaliation in violation of Title VII because: (1) Plaintiff cannot establish a prima facie case of retaliation; and (2) Plaintiff cannot demonstrate that Defendants' legitimate, non-retaliatory reason for terminating her is pretextual.

**Issue No. 5:**

Whether Defendants are entitled to summary judgment on Plaintiff's punitive damages claim because Plaintiff cannot demonstrate that any managerial agent of Defendants acted with malice or reckless indifference towards Plaintiff's rights.

---

[1] The present matter is actually two consolidated lawsuits with identical claims based on the same set of facts. Thus, this motion asks for judgment on each claim in each separate lawsuit. For simplicity, however, the twin claims in each case will simply be referred to in the singular (*e.g.*, Plaintiff's claim for national origin discrimination.)

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

III.   STATEMENT OF FACTS

    A.   **Defendants Service West and Rudolph & Sletten.**

        1.   **Service West, Inc.**

Service West is a privately owned interiors construction company headquartered in San Leandro, California. (Declaration of Ruben DeLeon ["DeLeon" Decl."] ¶¶ 1-2.) Service West is committed to providing a positive work environment free of unlawful harassment, discrimination, and retaliation. (DeLeon Decl. ¶ 3, Exh. A.) The Company does not tolerate any harassment due to race, color, religion, sex, national origin, disability, age, marital status, citizenship status, or any other basis protected by federal or state law or regulation. *Id.* Service West maintains a strict policy against harassment and retaliation, which is set out in the employee handbook given to all employees upon hire. *Id.* The legally compliant policy contains clear information regarding the various channels through which an employee may report actual or perceived incidents of harassment, and contains a guarantee of no retaliation for doing so. *Id.* Furthermore, Service West managers and supervisors undergo training on the written policies against harassment and discrimination and are charged with enforcing them. (DeLeon Decl. ¶ 4.)

        2.   **Rudolph and Sletten, Inc.**

Rudolph & Sletten is a general construction contracting firm with a corporate office in San Carlos, California. (Declaration of Terrence Huie ["Huie Decl."] ¶¶ 1-2.) Like Service West, Rudolph & Sletten is committed to providing a positive work environment free of unlawful harassment, discrimination, and retaliation. (Huie Decl. ¶ 3, Exh. A.) The Company maintains a "Harassment, Discrimination and Retaliation Prevention Policy." *Id.* In addition to forbidding harassment or discrimination of any sort, the policy prohibits retaliation against individuals who raise complaints of unlawful harassment or discrimination, or who participate in workplace investigations. *Id.* Employees receive the written anti-harassment policy upon hire. (Huie Decl. ¶ 3.) Rudolph & Sletten's "Harassment, Discrimination and Retaliation Prevention Policy" outlines several different mechanisms an employee can use to report unlawful harassment, discrimination, or retaliation. (Huie Decl. ¶ 3, Exh. A.) Furthermore, Rudolph & Sletten managers and supervisors undergo mandatory anti-harassment and anti-discrimination training. (Huie Decl. ¶ 4.)

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415 433 1940

12.

Case No. 4:18-cv-01402-PJH

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**B.     Plaintiff's Initial Employment With Service West And Subsequent Transfer To Rudolph & Sletten.**

On June 13, 2016, Plaintiff began working for Service West as a Drywall Apprentice on the AC2 project in Cupertino.  (DeLeon Decl. ¶¶ 5, 8, Exh. B.)  At her hire, Plaintiff received a copy of Service West's employee handbook, and signed an acknowledgment of receipt.  (DeLeon Decl. ¶ 9, Exh. C.)

Rudolph & Sletten served as the general contractor on the AC2 project.  (Huie Decl. ¶ 5.)  In August 2016, Service West's non-supervisory employees working on the AC2 project were transferred to Rudolph & Sletten's payroll and became Rudolph & Sletten employees, although they continued to be managed by Service West supervisors.[2]  (DeLeon Decl. ¶¶ 14-15.)  Plaintiff was one of those employees.  (DeLeon Decl. ¶ 16, Exh. H; Huie Decl. ¶ 6.)  Upon being hired by Rudolph & Sletten, Plaintiff received a copy of the company's "Harassment, Discrimination and Retaliation Prevention Policy," and signed an acknowledgment of her receipt.   (Huie Decl. ¶ 7, Exh. B.)  Plaintiff remained an apprentice after the transfer and throughout her employment with Rudolph & Sletten.[3]  (Huie Decl. ¶ 8.)

Defendants bring this motion jointly.

**C.     Plaintiff's Pattern Of Unexcused Work Tardiness And Absences Began Shortly After Being Hired.**

On July 6, 2016 – less than one month on the job – Plaintiff received a verbal warning for tardiness.  (DeLeon Decl. ¶ 10, Exh. D.)  Shortly thereafter, on August 3, 2016, Plaintiff received a written warning for failing to attend work on July 26, 27, 28, and 29, 2016[4], as well as for arriving late to work on August 2, 2016.  (DeLeon Decl. ¶ 11, Exh. E.)

On August 15, 2016, Plaintiff received a second written warning because she again

---

[2] The transfer was dictated by business considerations that have no relevance to the issues in the present lawsuits.
[3] Plaintiff did move from a Level 1 Apprentice to a Level 2 Apprentice, and then to a Level 3 Apprentice (out of a possible 8 levels) while at Rudolph & Sletten. (Huie Decl. ¶ 8.)
[4] Plaintiff contends she missed only three of the four days.  However, the exact number of days is not material for the purposes of this motion.  When asked in deposition why she failed to attend work on July 26-29, 2016, Plaintiff testified that she missed three workdays due to attending a court appearance, which unexpectedly resulted in the Court "remanding" her and sending her to jail. (Declaration of Deborah O. Olaleye, ¶ 2, Exh. A ["Pltf's Depo."], 47:21-55:1, 354:20-356:3, 417:19-418:5.)

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415 433 1940

1   arrived late, and this time she was also issued a three-day suspension.[5] (DeLeon Decl. ¶ 12, Exh. F.)

2   Plaintiff's tardiness and absenteeism would continue throughout her employment on the AC2

3   project.

4        **D.**    **Mike Jones' Complaint To Human Resources About Plaintiff, Plaintiff's**

5              **Counter-Complaint Against Jones, And The Subsequent Investigation.**

6         On January 5, 2017, Drywaller Mike Jones complained to Rudolph & Sletten's

7   Human Resources Department about Plaintiff's conduct on the job.  (Declaration of Julie Jacobs

8   ["Jacobs Decl."] ¶ 2, Exh. A)  Jones complained that after he set down a box of work gloves

9   intended for his crew (which did not include Plaintiff) Plaintiff "grabbed some of [the gloves] and

10  took off with them."  *Id.*  This subsequently became known as "the glove incident."  Jones also

11  accused Plaintiff of using profanity towards him on the job site.  *Id.*

12        On January 12, 2017, Plaintiff met with Julie Jacobs, Rudolph & Sletten's then-

13  Human Resources Manager to discuss the glove incident.  (Jacobs Decl. ¶¶ 1, 4.)  In the meeting,

14  Plaintiff began complaining about Jones' comments on the job site referring to her sex and her race.

15  (Jacobs Decl. ¶¶ 4-5.)

16        Jacobs immediately launched an investigation into Plaintiff's complaint, merging it

17  with her investigation of Jones' complaint.   (Jacobs Decl. ¶ 6; Declaration of Jennifer Farinha

18  ["Farinha Decl."] ¶ 2.)  After approximately 15 interviews with employees from both Rudolph &

19  Sletten and Service West on the AC2 project, she concluded the investigation and made her findings.

20  (Jacobs Decl. ¶¶ 6-7.)

21        With regard to the glove incident, Jacobs found that Plaintiff:

22      ◦      Took the gloves retained by Jones;

23      ◦      Swore at Jones when he tried to retrieve the gloves back from her; and

24      ◦      Swore at Jones again later in the day when she saw him at the "gang box" (the

25  area where tools are picked).  (Jacobs Decl. ¶ 7, Exh. B.)

26        With respect to Plaintiff's allegations, Jacobs concluded that Jones had engaged in the

---

27  [5] According to Plaintiff, although she was issued a three-day suspension, the suspension was reduced
28  to two days. (Pltf's Depo., 63:14–65:19.)  The length of the suspension is not material for the
    purposes of this motion.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

14.

Case No.  4:18-cv-01402-PJH
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

following behavior:

    ○    Making inappropriate comments about employees of Mexican descent after the 2016 presidential election;

    ○    Frequently stating that he is a "bigot and proud of it" at morning line-up; and

    ○    Using a "disparaging epithet (N-word)" towards Plaintiff during an offsite, after-hours get-together among employees.

(Jacobs Decl. ¶ 7, Exh. B.)

On January 30, 2017, Jacobs issued individual (but identical) memoranda to Jones and Plaintiff, summarizing the findings on their respective complaints.  (Jacobs Decl. ¶¶ 7-8.)  Both Plaintiff and Jones were admonished for the manner in which they handled the glove incident, were reminded to adhere to company policy on exhibiting professional and polite behavior, and were told to refrain from using inappropriate language.  (Jacobs Decl. ¶ 7, Exh. B.)  Plaintiff was warned that any further violation of conduct could be grounds for discipline, including termination.   (Jacobs Decl. ¶ 7, Exh. B.)  Jones was ordered to participate in interactive anti-harassment training, which he completed.  (Huie Decl. ¶ 14, Exh. D; Jacobs Decl. ¶ 9.)

After the conclusion of the investigation, Plaintiff and Jones continued to work at separate areas of the AC2 project.  (Farinha Decl. ¶ 3.)  Neither Jones nor Plaintiff reported any further incidents involving each other, with the exception of one brief encounter on February 24, 2017, which is discussed in more detail below.  (Jacobs Decl. ¶ 10.)  Plaintiff's timesheets show that she continued to work occasional overtime hours as she had before, including on her last day of work with Rudolph & Sletten.  (Huie Decl. ¶ 9, Exh. C.)

**E.**    **Plaintiff's Continued Workplace Tardiness During And After Rudolph & Sletten Human Resources' Investigation.**

Plaintiff's performance issues continued during and after the investigation into her complaint against Jones.  On January 18, 2017, Plaintiff received a written warning for arriving to work late.  (DeLeon Decl. ¶ 17, Exh. I.)  On February 9, 2017, she received a written warning for arriving 30 minutes late to work.  (DeLeon Decl. ¶ 18, Exh. J.)

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415 433 1940

15.

Case No.  4:18-cv-01402-PJH
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**F.     The End Of Plaintiff's Employment With Defendants.**

    **1.     Plaintiff's Last Day of Work with Rudolph & Sletten.**

On February 24, 2017, there was no work for Plaintiff in her usual department. (Declaration of Deborah O. Olaleye, ¶ 2, Exh. A ["Pltf's Depo."], 310:4-6.)  Service West Quality Control Manager Nick Stafford instructed Plaintiff to report to Minh Huynh's crew instead. (Pltf's Depo., 310:4-25.)   Unbeknownst to Stafford, Jones had also been assigned to the crew.  (Pltf's Depo., 310:4-25, 319:10-17.)  Plaintiff testified that she discovered this when she and Jones passed each other on the stairs on the job site.  (Pltf's Depo., 310:4-25, 316:14-317:5.)  At that time he allegedly "…uttered something under his breath, and [] was just acting cocky and like he's superior…" (Pltf's Depo., 316:22-24.)  After encountering Jones in passing on the stairs, Plaintiff immediately contacted Rudolph & Sletten Human Resources Manager Julie Jacobs, who told Plaintiff she could leave for the day.  (Pltf's Depo., 310:4-25, 316:14–317:5; Jacobs Decl. ¶ 13.) Plaintiff's timesheets nonetheless reflect that she worked eight straight time hours and one hour of overtime that day.[6]  (Huie Decl. ¶ 9, Exh. C.)

After that day, Plaintiff never returned to work.  (Jacobs Decl. ¶ 14.)

    **2.     Termination Of Plaintiff's Employment with Rudolph & Sletten.**

Following the Jones/Purnell investigation, Plaintiff lodged additional complaints with Jacobs about alleged pay discrepancies and unhappiness with her assignments and supervisors. (Jacobs Decl. ¶ 11.)  In March 2017, Jacobs reached out to Service West's Vice President of Human Resources Jennifer Farinha to enlist her help in addressing Plaintiff's concerns.  (Jacobs Decl. ¶ 15.) Jacobs also asked for assistance in dealing with Plaintiff's absences from work. (Jacobs Decl. ¶ 15.) Farinha agreed to help.  (Farinha Decl. ¶ 4.)

On March 8, 2017, Farinha informed Jacobs that she had contacted Plaintiff to discuss her concerns, and that Service West was trying to find a "softer personality" for a supervisor who could nonetheless hold her accountable. (Farinha Decl. ¶ 5, Exh. A.)  On March 15, 2017, Farinha informed Jacobs that Service West had appointed Clifton Barnes to serve as her new

---

[6] Whether Plaintiff worked a full or partial day on February 24, 2017 is not material for disposition of her claims.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco CA 94104
415 433 1940

16.

Case No.  4:18-cv-01402-PJH
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    supervisor. (Farinha Decl. ¶ 6, Exh. B.)

2        On or around March 15, 2017, Farinha set up a meeting with Plaintiff, Barnes and

3 herself on March 17, 2017. (Farinha Decl. ¶ 8, Exh. C.)  Farinha spoke with Plaintiff on the phone

4 and told her to call if she could not make the meeting. (Farinha Decl. ¶ 8, Exh. C.)  The day before

5 the meeting, Farinha tried to call Plaintiff twice to confirm, but could not reach her or get any

6 response. (Farinha Decl. ¶ 8, Exh. C.)  On March 17, Plaintiff failed to show for the meeting.

7 (Farinha Decl. ¶¶ 7-8, Exh. C.)

8        After missing the March 17 meeting, Plaintiff was also a no-call/no-show for her next

9 three scheduled days of work: March 20, 21, and 22, 2017. (DeLeon Decl. ¶ 19, Exh. K.)

10        On March 22, 2017, Farinha sent Plaintiff a letter rescheduling their missed meeting.

11 (Farinha Decl. ¶ 9, Exh. D.)  She sent the letter to the mailing address Plaintiff had on file, and

12 received confirmation that it was received. (Farinha Decl. ¶ 9, Exh. D.)  The letter noted Plaintiff's

13 failure to show up for work on March 20, 21, and 22, and stated "This is considered three No Call

14 No shows, which is unacceptable. (Farinha Decl. ¶ 9, Exh. D.)  In her letter, Farinha told Plaintiff

15 that the meeting was being re-set for March 29, 2019, and that it was important for Plaintiff to

16 attend. (Farinha Decl. ¶ 9, Exh. D.)  Farinha further stated <u>"If you miss this meeting, we will assume</u>

17 <u>you have voluntarily resigned and are no longer interested in working for Rudolph and Sletten."</u>

18 (Farinha Decl. ¶ 9, Exh. D.)

19        Plaintiff was a no-call/no-show for her next scheduled days of work: March 23, 24,

20 27, 28, and 29, 2017. (DeLeon Decl. ¶ 19, Exh. K.)

21        On March 29, 2017, Farinha, Barnes, and Plaintiff's union business agent convened

22 for the scheduled meeting. (Farinha Decl. ¶ 11, Exh. E.)  They waited for more than half an hour

23 after the scheduled start time, but Plaintiff did not appear or call to say she could not make it.

24 (Farinha Decl. ¶¶ 10-11, Exh. E.)

25        Later on the afternoon of March 29, Plaintiff called Farinha and told her that she did

26 not respond to Farinha's numerous attempts to reach out because "she didn't think [Farinha] could

27 help her." (Farinha Decl. ¶ 11, Exh. E.)  Farinha had a meeting at the time of the phone call, and

28 informed Plaintiff she would call her back. (Farinha Decl. ¶ 11, Exh. E.)  Farinha called Plaintiff on

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

17.

Case No.  4:18-cv-01402-PJH

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   April 3, 2017, and left a message for her to contact her. (Farinha Decl. ¶ 11, Exh. E.)  Plaintiff never

2   responded.  (Farinha Decl. ¶ 11, Exh. E.)

3               On or around April 3, 2017, Plaintiff's employment was terminated for job

4   abandonment.  (Jacobs Decl. ¶¶ 16-17, Exh. C.)

5   **IV.    LEGAL STANDARD FOR SUMMARY JUDGMENT.**

6               "One of the principal purposes of the summary judgment rule is to isolate and

7   dispose of factually unsupported claims or defenses."  *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323-

8   24 (1986).  Thus, "[t]he court shall grant summary judgment if the movant shows that there is no

9   genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

10  Fed. R. Civ. Proc. 56(a).  Material facts are those necessary to the proof or defense of a claim as

11  determined by the substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "A

12  'scintilla of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,' is not

13  sufficient to present a genuine issue as to a material fact."  *United Steelworkers of Am. v. Phelps*

14  *Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (citations omitted)  "When the moving party has

15  carried its burden under Federal Rule of Civil Procedure 56(c), its opponent must do more than

16  simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric*

17  *Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Conclusory, speculative testimony

18  is insufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill Publishing*

19  *Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979) (affirming summary judgment where

20  plaintiff submitted "conclusory and speculative affidavits" that failed to set forth specific facts).

21              This standard applies to all parties, including those representing themselves, as *pro se*

22  representation does not excuse a party from complying with the Federal Rules of Civil Procedure.

23  *See Stevens v. Rice*, 1996 WL 207163, at *1 (N.D. Cal. Apr. 18, 1996);  *Chan v. Ramada Plaza*

24  *Hotel*, 2003 WL 22159061, at *3 (N.D. Cal. Sept. 12, 2003).

25

26

27

28

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco  CA  94104
415 433 1940

18.

Case No.  4:18-cv-01402-PJH
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

V.    **LEGAL ARGUMENT**

    A.    **Because Plaintiff Cannot Establish Any Of The Elements Of A Claim For Hostile Work Environment Harassment Based On National Origin, Her Claim Fails.**

        1.    **Plaintiff's Factual Claims Re Alleged Hostile Work Environment Harassment Based On National Origin.**

Plaintiff alleges that she was harassed because of her Ethiopian and Haitian ancestry. However, her allegations do not establish a claim for national origin discrimination.   In her deposition, during which she was asked to elaborate on her conclusory, form-complaint allegations of harassment, her (perceived) national origin came up only twice:

      ○    <u>Logistics Foreman Jeremy Miller</u> – Plaintiff testified that Miller asked her what her nationality[7] was, and she told him. (Pltf's Depo., 248:3-10.)  She did not find the question or the interaction offensive: "It was nothing, you know, harassing." (*Id.*)

      ○    <u>Project Manager Christopher Marshall</u> – Plaintiff speculated that Marshall knew that she was of Ethiopian descent because he was present one day when another Ethiopian worker with the same last name[8] as Plaintiff had asked her about her last name during the morning "flex and stretch" session. (Pltf's Depo., 237:6-15).  However, Plaintiff has admitted that Marshall never mentioned her "national origin" or ancestry. (Pltf's Depo., 237:2-5.)

        2.    **Even If Taken As True, The Facts Alleged By Plaintiff Do Not Support A Claim For Hostile Work Environment Based On National Origin As A Matter Of Law.**

The only alleged conduct here even arguably concerning national origin is Miller's question about Plaintiff's background.  Plaintiff has not alleged that it led to harassment of any sort. Such a question does not constitute inappropriate conduct, and Plaintiff admits it was not unwelcome.  Nor can it be considered severe or pervasive.

Because Plaintiff cannot meet a single element for hostile work environment based on national origin, her claim fails and summary judgment should be granted in favor of Defendants on this cause of action.

---

[7] Plaintiff has stated she was born in the U.S. and is an American citizen. (Pltf's Depo., 226:9-12.) However, in this lawsuit she appears to have conflated the concepts of "nationality" and "ancestry."
[8] In this instance, Plaintiff was referring to what she calls her "birth last name" of Kidane.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

19.                Case No.  4:18-cv-01402-PJH
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**B.    Because Plaintiff Cannot Establish Any Of The Elements Of A Claim For Hostile Work Environment Harassment Based On Her Sex, Her Claim Fails.**

**1.    Plaintiff's Factual Claims Re Alleged Hostile Work Environment Harassment Based On Her Sex.**

Plaintiff has also asserted that she was subjected to a hostile work environment based on her sex. She bases this claim on the following allegations:

- <u>Co-worker Mike Jones</u> – Jones made the comment "[Women] don't belong on the jobsite." (Pltf's Depo., 262:8-12.) Plaintiff testified that her reaction to this comments was, "I didn't take [it] too personal." (Pltf's Depo., 262:13.)

- <u>Co-worker Mike Jones</u> – Jones called her a "bitch." (Pltf's Depo., 265:6-10.)

- <u>Project Manager Christopher Marshall</u> – Marshall told her "more than several times" that "as a woman, you have to work harder, and, you know, you got to work . . . two times harder than men. That's just how it is in this trade." (Pltf's Depo., 236:1-14.) She admits, however, that she cannot recall when he actually said that or in what instances. (Pltf's Depo., 236:9-10.)

- <u>Logistics Foreman Jeremy Miller</u> – Miller would say things like "[You'll] be the only female for a minute until one other female joins the logistics crew," or "let the girl . . . lead the stretch-and-flex." (Pltf's Depo., 247:12-24.) Again, however, Plaintiff has admitted that "I didn't take it too personal." (Pltf's Depo., 247:24–248:2.)

- <u>Logistics Foreman Jeremy Miller</u> – Miller "was responsible for [her] hours [being] unreported" and that he "cut [her] off on overtime, and [] was only giving it to who he chose." (Pltf's Depo., 240:4-17.)

- <u>Logistics Foreman Jeremy Miller</u> – There was an occasion where Plaintiff told Miller that she "didn't feel good," and wanted to leave work early, and he told her if she left, she could not come to work the next day. (Pltf's Depo., 240:18–242:12.) Plaintiff testified that she believed Miller said this "because of…the fact that [she] was a woman." (Pltf's Depo., 240:18–242:12.)

**2.    Even If Taken As True, The Facts Alleged By Plaintiff Do Not Support A Claim For Hostile Work Environment Sexual Harassment As A Matter Of Law.**

To determine whether conduct was sufficiently severe or pervasive to violate Title

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415 433 1940

20.

Case No.  4:18-cv-01402-PJH

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

VII, courts look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2003).   Offhand comments and isolated incidents, unless extremely serious, do not amount to discriminatory changes in the "terms and conditions" of employment, and do not create a hostile work environment. *Breeden*, 532 U.S. at 271; *see Faragher v. City of Boca Raton*, 524 U.S. 775, 788 ("We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment, and the Courts of Appeals have heeded this view.") "These standards for judging hostility are sufficiently demanding to ensure that [prohibition on harassment] does not become a 'general civility code'" in the workplace. *Faragher*, 524 U.S. at 788.   This standard "filter[s] out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id.* at 788.

With respect to the use of the term "bitch," the courts have held that when directed at a particular person, as opposed to at women in general, it does not show discriminatory animus against women. *See Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338, 342-43 (6th Cir. 1998) (supervisor's use of word "bitch" showed personal dislike rather than discriminatory animus); *see also Kriss v. Sprint Communications Co. Ltd. P'ship*, 58 F.3d 1276, 1281 (8th Cir. 1995) (use of "the word 'bitch'… is not an indication of a general misogynist attitude [but rather] it is a crude, gender-specific vulgarity, which in this case was directed toward only one woman, rather than women in general.")

The comments described above, on which Plaintiff bases her allegations, are sporadic and generally inoffensive.  They are not severe or pervasive as a matter of law.  Moreover, the most arguably offensive comment ("bitch") is not sex-based as a matter of law.  Finally, some of the other comments referring to Plaintiff's sex could even be construed as encouraging or mentoring, *and* Plaintiff has admitted they did not bother her.

Further, Plaintiff has not provided any support for her contentions that the alleged comments were made because of her sex.   For instance, Plaintiff only speculates and offers

21.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   conclusory opinions that Miller (allegedly) reduced her overtime opportunities or warned her against

2   leaving for the day because she is a woman.  The only comment or action arguably addressing

3   Plaintiff's sex ("bitch") is not sex-based as a matter of law.  Just because Plaintiff did not like how

4   she was treated on occasion, and because she is a woman, does not mean she has a viable claim for

5   sexual harassment.

6          In short, Plaintiff cannot establish the necessary elements for a claim of a hostile

7   work environment sexual harassment, and this cause of action fails.  Summary judgment should be

8   granted in favor of Defendants on this cause of action.

9   **C.      Because Plaintiff Cannot Establish Any Of The Elements Of A Claim For
          Hostile Work Environment Harassment Based On Her Race, Her Claim Fails.**

10

11  **1.      Plaintiff's Factual Claims Re Alleged Hostile Work Environment
             Harassment Based On Her Race.**

12         Plaintiff has also asserted that she was subjected to a hostile work environment based

13  on her race.  She bases this claim on the following allegations:

14         ○     Co-Worker Mike Jones – Plaintiff overheard coworker Mike Jones refer to

15  himself as a bigot and racist to someone, and she "felt like he was saying it loud enough for me to

16  hear." (Pltf's Depo., 267:18-21.)

17         ○     Co-Worker Mike Jones – When Plaintiff returned to work after her arrest for

18  being engaged in a fight at the Patio Bar & Grill, "Moa told me that Mike Jones is going around

19  bragging to everybody, saying he helped hold that n-i-g-g-e-r down." (Pltf's Depo., 275:5-13.)

20  Plaintiff admitted, however, that Jones did not say this to her. (Pltf's Depo., 276:7-9.)

21         ○     Co-Worker Mike Jones – Plaintiff described one instance at an after-work

22  gathering with coworkers at which Jones directly called her "the N word."  She testified, however,

23  that Jones later apologized via another employee, which she accepted.  (Pltf's Depo., 266:6-25.)

24         ○     Project Manager Christopher Marshall – Project Manager Christopher

25  Marshall told Plaintiff during an "office meeting" that "…the only reason why [she had her] job and

26  [was] getting another chance [wa]s because of Lee Marshall [an employee of another contractor[9] on

27

28  ────────────────
    [9] Lee Marshall was not employed by either Service West or Rudolph & Sletten.

1   the AC2 Project]…" Plaintiff considered this statement an act of "blackmail." (Pltf's Depo., 228:1-

2   16.) Plaintiff admits that Marshall did not mention her race during the meeting. (Pltf's Depo.,

3   233:18-20.)

4          ○   <u>Project Manager Christopher Marshall</u> – Plaintiff was told by another

5   employee that Marshall referred to her as "that N word," telling others not to work with her.

6   However, she concedes that Marshall never used that term to her face. (Pltf's Depo., 228:17-

7   230:12.)

8          **2.   Even If Taken As True, The Facts Alleged By Plaintiff Do Not Support A
           Claim For Hostile Work Environment Racial Harassment As A Matter
9          Of Law.**

10         Plaintiff must demonstrate not only that she was subjected to unwelcome verbal or

11  physical conduct based on her race, but also that the conduct was sufficiently "severe or pervasive"

12  to alter the terms and conditions of her employment to create an abusive work environment.

13  *Vasquez v. County of L.A.*, 349 F.3d 634, 642 (9th Cir. 2003) (affirming dismissal of harassment

14  claims on summary judgment).

15         Title VII is not a "general civility code for the American workplace." *Oncale v.*

16  *Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998).

17         **a.   Plaintiff's Subjective Belief That Being Told That She Still Had
           Her Job Was Due To An Industry Connection Does Not Support A
18         Claim That It Was Racial Harassment.**

19         A "plaintiff may [not] create a genuine issue of material fact by relying solely on the

20  plaintiff's subjective belief that the challenged employment action was unnecessary or unwarranted."

21  *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028–29 n. 6 (9th Cir. 2006); *Schuler v.*

22  *Chronicle Broad. Co. Inc.*, 793 F.2d 1010, 1011 (9th Cir. 1986) ("subjective personal judgments do

23  not raise a genuine issue of material fact.); *Dupree v. Apple, Inc.*, 2017 WL 2617978, at *14–16

24  (N.D. Cal. June 16, 2017), *aff'd*, 715 F. App'x 798 (9th Cir. 2018) (stating that as plaintiff had not

25  produced evidentiary support that various events, including coworker's statement "I'm going to

26  punch you in the face," had anything to do with his race, plaintiff had not established a hostile work

27  environment claim under Title VII, and even if plaintiff "was subjectively offended or felt

28  uncomfortable because of these events, [plaintiff's] subjective belief alone [was] not sufficient" to

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco CA  94104
415.433.1940

1  establish claim."); *Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 F. App'x 104, 107 (5th Cir. 2009)

2  ("Though [plaintiff] may believe that all [alleged] incidents were motivated by racial animus,

3  subjective belief of racial motivation, without more, is not sufficient to show a hostile work

4  environment."); *Montgomery v. Sears Roebuck & Co.*, 720 F. Supp. 2d 738, 745 (W.D. La. 2010)

5  ("[a] subjective belief of racial motivation cannot import racial animus into an individual's conduct,

6  and, without objective evidence, is insufficient to create a prima facie claim for a hostile work

7  environment under Title VII.")

8       Here, assuming Plaintiff's allegation that Chris Marshall told her she still had her job

9  due to the endorsement of Lee Marshall is true, there is nothing about this comment that suggests

10  racial animus, and it does not support Plaintiff's racial harassment claim.

11         **b.**     **Comments That Were Not Directed At Plaintiff Or That Were**
12                   **Made Outside Her Presence Cannot Support A Claim Of**
                  **Harassment.**

13       To establish that a work environment was subjectively offensive, Plaintiff may not

14  introduce evidence of incidents that she did not personally experience.  *See Brooks v. City of San*

15  *Mateo*, 229 F. 3d 917, 924 (9th Cir. 2000) ("Harassment directed towards others of which an

16  employee is unaware can, naturally, have no bearing on whether she reasonably considered her

17  working environment abusive."); *Knight v. Brown*, 485 F. App'x 183, 184 (9th Cir. 2012) (stating

18  plaintiff failed to establish a hostile work environment claim, where plaintiff's evidence of "one

19  racially offensive comment" which was "an isolated incident, made out of [his] presence...[was]

20  neither severe nor pervasive enough to alter the conditions of his employment and create an abusive

21  work environment."); *Johnson v. TCB Constr. Co.*, 334 F. App'x 666, 671 (5th Cir. 2009) (finding

22  although plaintiff offered evidence of supervisor's frequent uses of the n-word, because comments

23  were not uttered in plaintiff's presence or evidenced to affect his job, plaintiff did not present

24  sufficient evidence that he suffered from a racially hostile work environment under Title VII).

25       In two of the allegations above, Plaintiff claims that she was told by other co-workers

26  that both Jones and Marshall had used the "n-word" to refer to her, but admits that she did not

27  personally hear them using this offensive term.  Moreover, Plaintiff admits she only remembers one

28  specific individual telling her about Jones' use of the "n-word" on one specific occasion.  (Pltf's

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

24.

Case No.  4:18-cv-01402-PJH

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  Depo., 275:5-13.)  Although she suggested that she *might* have been told about Marshall's use of the

2  "n-word" "several times," she could not provide any specifics (*e.g.*, who told her this, when, how

3  often, etc.), and conceded that "a few of them came up to me just reiterating the same thing . . . [a]nd

4  it was just – they were just gossiping about me. . . ."  (Pltf's Depo., 229:8-230:7.)

5          Plaintiff contends she was told by someone else that Marshall ordered other

6  employees not to work with her, and used a racial epithet to describe her, but does not claim to have

7  personal knowledge of this.  Nor can she demonstrate that anyone adhered to such an instruction.

8          **c.**      **Jones Isolated Use Of The "N-Word" Directed Toward Plaintiff**

9                   **Does Not Constitute Actionable Harassment.**

10          Among the specific allegations raised by Plaintiff in support of her racial harassment

11  claim, the only directly applicable allegation that could potentially support her claim is the allegation

12  that Jones called her the "n-word" to her face on one occasion.  However, while such a comment is

13  offensive and inappropriate, this single instance, standing alone, does not constitute actionable

14  harassment.

15          "[M]ere utterance of an ethnic or racial epithet which engenders offensive feelings in

16  an employee" does not sufficiently alter the terms and conditions of employment to violate Title VII.

17  *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971), *abrogated on other grounds by EEOC v. Shell*

18  *Oil Co.*, 466 U.S. 54, 62 n. 11 (1984).  Plaintiff has only alleged one occasion where Jones directly

19  called her the "n-word," and it was after hours at a social gathering.  She also confirmed he

20  apologized for the comment and that she accepted his apology.  (Pltf's Depo., 266:6-25.)  The single

21  instance in which she was allegedly called the n-word was not severe or pervasive, and cannot be

22  said to have altered the terms and conditions of Plaintiff's employment as a matter of law.

23          The Ninth Circuit and California district courts have found that more frequent

24  incidents of harassment than those alleged by Plaintiff were not severe or pervasive as a matter of

25  law.  *See, e.g., Manatt v. Bank of Am., NA*, 339 F.3d 792, 795–99 (9th Cir. 2003) (coworkers' use of

26  the term "China-man," ridicule of the plaintiff's mispronunciation of English words, statement that

27  "I've had the worst kind of trouble with your countrymen," and gestures mocking the appearance of

28  Asians were insufficient to create hostile work environment); *Alvarado v. FedEx Corp.*, 2006 WL

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco  CA  94104
415 433 1940

25.

Case No.  4:18-cv-01402-PJH
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

644875, at *15–16 (N.D. Cal. Mar. 13, 2006) (supervisor's use of single racial slur insufficient to create a hostile work environment, even when considered in the context of the supervisor's constant negative criticisms and insulting remarks that the plaintiff was "too slow and fat" to work for the employer).

Because Plaintiff cannot establish the necessary elements for a claim of hostile work environment based on race, this cause of action fails. Summary judgment should be granted in favor of Defendants on this cause of action.

### 3. Even If Plaintiff Could Establish A Prima Facie Case Of Hostile Work Environment Harassment Based on Race, Defendants Are Not Liable.

#### a. When Apprised Of Mike Jones' Alleged Harassment, Defendants Took Prompt Effective Remedial Action.

Where a Plaintiff alleges harassment by a coworker, he or she must prove that the employer was "negligent in controlling working conditions," or more specifically, that the employer knew or should have known of the harassment but did not take adequate steps to address it. *Vance v. Ball State Univ.*, 570 U.S. 421, 453-54 (2013). "Notice of the [] harassing conduct triggers an employer's duty to take prompt corrective action that is 'reasonably calculated to end the harassment." *Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir. 2001) (finding employer took prompt remedial steps in separating plaintiff from alleged coworker harasser and conducting an investigation); *Lewis v. Redding Med. Ctr.*, 21 F.3d 1114, 1994 WL 123862, (9th Cir. 1994) (affirming summary judgment for employer where plaintiff failed to raise genuine issue of material fact as to whether employer failed to take prompt remedial action); *Smith v. Cty. of Humboldt*, 240 F. Supp. 2d 1109, 1119 (N.D. Cal. 2003) ("courts have held that in coworker harassment cases, employers can avoid liability by taking corrective action that is 'reasonably calculated to end the harassment'").

Here, both Defendants had fully compliant anti-harassment policies with robust reporting mechanisms. When Plaintiff raised her concerns about Jones' conduct to Jacobs[10], Rudolph & Sletten immediately investigated and determined that both Plaintiff and Jones had

---

[10] Albeit in the form of a counter-complaint after Jones had complained about her.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco CA 94104
415.433.1940

26.

Case No. 4:18-cv-01402-PJH
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    behaved inappropriately. As part of the actions taken following the investigation, Jones was

2    required to undertake interactive anti-harassment training because of the inappropriate behavior he

3    had displayed. Significantly, Plaintiff does not allege there were any further acts of alleged

4    harassment by Jones. Because Defendants took prompt, effective remedial action after receiving

5    Plaintiff's complaints about Jones, they cannot be held liable for his conduct.[11]

6          **b.    To The Extent Plaintiff Believed She Experienced Racial**
           **Harassment By Marshall, Her Claim Fails Because She Did Not**
7          **Avail Herself Of The Preventative And/Or Corrective**
           **Opportunities Set Forth In Defendants' Policies.**
8

9          For actions committed by a supervisor, it is well-settled that an employer is not liable

10   for a hostile work environment claim if: (1) the employer exercised reasonable care to prevent and

11   correct promptly any harassing behavior; and (2) the plaintiff unreasonably failed to take advantage

12   of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

13   *Burlington Indus. v. Ellerth*, 524 U.S. 742, 745 (1998); *Vance*, 570 U.S. at 421.

14         Both Service West and Rudolph & Sletten have implemented policies and procedures

15   to prevent harassment. Defendants' policies advise employees of the channels to report actual and

16   perceived violations of their written policies, such as reaching out to a supervisor or contacting

17   Human Resources. Defendants' employees who work as supervisors or managers also undergo

18   training on the policies. The existence of such anti-harassment policies and procedures demonstrates

19   that Defendants exercised reasonable care in trying to prevent unlawful harassment.

20         Additionally, at the conclusion of the Jones/Purnell investigation, Jacobs reminded

21   Plaintiff to contact Human Resources if she experienced any discriminatory or harassing acts, or

22   suspected retaliation. Plaintiff did not complain of any unlawful conduct by Marshall at any time

23   during her employment with Rudolph & Sletten, despite knowing how to effectively use Defendants'

24   procedures to report perceived harassment, as she had in the case of Jones. Yet, she did not utilize

25   those procedures with respect to Marshall. Thus, Plaintiff unreasonably failed to take advantage of

26   the opportunities provided by Defendants to ensure that the workplace was free of unlawful

27
_____

28   [11] As set forth above, even absent Defendants' swift response, Defendants contend that Jones'
     alleged actions did not create a hostile work environment as a matter of law.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco CA 94104
415 433 1940

27.                                                    Case No.  4:18-cv-01402-PJH
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    harassment.

2    **D.    Plaintiff's Retaliation Claim Fails For Myriad Reasons.**

3    To establish a *prima facie* case of retaliation under Title VII, Plaintiff must prove: (1)

4    she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal

5    link exists between the protected activity and the adverse employment action. *Villiarimo v. Aloha*

6    *Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002). If Plaintiff can establish a *prima facie* case,

7    Defendants must then articulate a non-retaliatory reason for their action, which will shift the burden

8    back to Plaintiff to prove that the proffered reason is a pretext for intentional retaliation. *Nilsson v.*

9    *City of Mesa*, 503 F.3d 947, 953-54 (9th Cir. 2007).

10    **1.    Plaintiff's Factual Claims Re Alleged Retaliation.**

11    Plaintiff alleges that Defendants retaliated against her for reporting allegedly

12    harassing conduct by coworker Mike Jones. Plaintiff claims to have experienced the following

13    forms of retaliation:

14    •    Most significantly, Plaintiff contends her employment was terminated in

15    retaliation for complaining about Jones. (Pltf's Depo., 324:11-12, 499:7-10.)

16    Plaintiff also alleges that a host of other routine Human Resources actions and minor

17    irritations were retaliatory in nature:

18    •    Plaintiff contends that the post-investigation memorandum issued by Rudolph

19    & Sletten Human Resources Manager Julie Jacobs on January 30, 2017 (Jacobs Decl. ¶ 7, Exh. B.)

20    was retaliatory. (Pltf's Depo., 314:8-12.)

21    •    Plaintiff contends that having to come into the office to get her check was a

22    form of retaliation. (Pltf's Depo., 296:2-6.)

23    •    Plaintiff contends that it took a month and a half for her January 3, 2017 "re-

24    rate" (an increase in pay due to change in apprenticeship level) to be reflected in her paychecks, and

25    her retro pay for the rerate was pieced together in two separate checks. (Pltf's Depo., 456:8-22.)

26    •    Plaintiff contends that Jacobs was not trying hard enough to get Plaintiff her

27    unpaid wages she had complained about, and that this constituted retaliation. (Pltf's Depo., 307:12-

28    25.)

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco CA 94104
415 433 1940

1        ○    Plaintiff contends that after complaining about Jones she was no longer

2    allowed to work overtime.  (Pltf's Depo., 114:11-17; 308:22-310:2.)

3        ○    Plaintiff contends that the fact that she was regularly assigned to different

4    supervisors (and different crews with different starting times) was retaliation, although she does not

5    know who made the assignment decisions.  (Pltf's Depo., 106:24-109:7, 231:24-232:21, 314:13–

6    315:15, 362:15–363:16.)

7        ○    On February 24, 2017, when there was no work on the "Estel" portion of the

8    project (which Plaintiff had previously been working on), Quality Control Manager Nick Stratford

9    assigned Plaintiff to Minh Huynh's crew, not knowing that Jones had also been assigned to that

10   crew.  When Plaintiff reported to the crew, she "crossed paths with [Jones]" on the stairs.  Jones

11   purportedly "uttered something under his breath" and looked at Plaintiff "like he was superior."

12   (Pltf's Depo., 310:4-23, 316:14-24, 490:20-24.)

            **2.**      **Even If Taken As True, The Facts Alleged By Plaintiff Do Not Support A Prima Facie Case Of Retaliation.**

                **a.**      **Apart From Plaintiff's Termination, The Acts Of Alleged Retaliation Do Not Constitute Adverse Actions.**

16       Although Plaintiff's complaints are many, apart from her termination she cannot even

17   establish that she was subjected to an adverse employment action.

18       The post-investigation memorandum to Purnell advising her of the findings and

19   conclusion regarding both her complaint (against Jones) and Jones' complaint (against her) cannot

20   be reasonably construed to be an adverse action.  Jacobs interviewed multiple coworkers of Plaintiff

21   and Jones, documented her findings, and wrote a detailed memorandum, which was provided to and

22   reviewed with each complainant.  Jacobs' actions were textbook Human Resources procedure and

23   best practice, and as such cannot be considered an adverse employment action as a matter of law.

24       With respect to paychecks, Rudolph & Sletten employees have the option of

25   receiving their paychecks when they are distributed on the job site on paydays, or by mail.  (Huie

26   Decl. ¶ 10.)   However, if an employee who has opted to receive their check on the job site is not

27   present at the time pay checks are distributed, the check may be sent to the corporate office to be

28   held until the employee can pick it up.  *Id.*  However, picking up a check in an office was not a

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco  CA  94104
415 433 1940

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  requirement. *See Id.* procedures apply to all Rudolph & Sletten employees. *Id.* Whenever a

2  Rudolph & Sletten employee brings a legitimate payroll error to the attention of the Company, the

3  error is rectified. (Huie Decl. ¶¶ 11-12.)  This was neither unique to Plaintiff nor retaliatory in

4  nature.

5  Nor does the delay in implementing the new apprenticeship rate or any minor

6  paycheck errors[12] constitute an adverse action.  An occasional error in pay calculation does not rise

7  to the level of a retaliatory act as a matter of law. *Anderson v. City & Cty. of San Francisco*, 169 F.

8  Supp. 3d 995, 1032 (N.D. Cal. 2016) (stating no adverse action occurred where after plaintiff

9  complained to employer about overtime pay being calculated at incorrect rate, employer corrected

10  error and provided plaintiff with correct payment);  *See Lewis v. Wilkie*, 909 F.3d 858, 868 (7th Cir.

11  2018) (stating that employer's "isolated administrative errors," including delayed paycheck and short

12  paycheck, do not "rise to level of materially adverse actions," as they did not cause "[plaintiff]

13  lasting harm or injury sufficient to dissuade a reasonable employee from engaging in protected

14  activity…[and] represent the kind of minor workplace grievances against which Title VII does not

15  protect.")  This is especially true for a pay raise dictated by apprenticeship level within the union,

16  which may not always be promptly and effectively communicated between the union and the

17  employer.

18  Plaintiff's perception that Jacobs, despite her statements that she was attempting to

19  help Plaintiff, was "not trying hard enough" is a subjective opinion that cannot constitute a

20  retaliatory act. (Pltf's Depo., 307:12-25.)

21  Plaintiff's contention that she was denied overtime fails because it is demonstrably

22  untrue.  As can be seen in her timesheets, Plaintiff's overtime hours fluctuated throughout her

23  employment on the AC2 project (first with Service West, then with Rudolph & Sletten).  (DeLeon

24  Decl. ¶ 13, Exh. G; Huie Decl. ¶ 9, Exh. C.)  Moreover, Plaintiff worked overtime hours during five

25  of her last six weeks as a Rudolph & Sletten employee. (Huie Decl. ¶ 9, Exh. C.)  Plaintiff's

26

27  ———————————

[12] To the extent Plaintiff may claim any pay errors apart from the apprenticeship "re-rate," she has

28  never articulated what those errors were or when they occurred.  Nor has Plaintiff ever pursued any
claim against Defendants for unpaid wages.

30.

Case No.  4:18-cv-01402-PJH

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  timesheets clearly show she worked overtime in the last weeks of her employment, so no claim of

2  retaliation can rest on alleged denial of overtime.

3       Plaintiff's complaints about being assigned to different crews and supervisors ignores

4  a fundamental fact about large-scale construction projects:  work needs vary and crew staffing must

5  constantly be adjusted.  (DeLeon Decl. ¶ 6.)  All workers on such projects, including the AC2

6  project, were subject to fluctuating work needs and requirements, and as such were frequently

7  reassigned to different crews and/or work areas.  *Id.*

8       Given the variable nature of crew assignments described above, the inadvertent

9  reassignment to Plaintiff to the same crew as Jones on a single occasion does not constitute an act of

10  retaliation.  (Plaintiff testified that Stafford told her he was unaware that Jones had also been

11  assigned to that crew, and she "let it go." (Pltf's Depo., 319:10-17.))  Nor does Jones' unintelligible

12  muttering or the look of "superiority" that he gave Plaintiff when he passed her on the stairs

13  constitute actionable retaliation.

14       In all, seven of the eight acts about which Plaintiff complains are not adverse actions,

15  and therefore Plaintiff cannot rely on them to support a retaliation claim.

16       **b.    There Is No Causal Connection Between Plaintiff's Complaints
               About Mike Jones And Her Separation From Employment.**
17

18       With respect to the termination of Plaintiff's employment, Plaintiff has no evidence,

19  apart from her own speculation, that even suggests a causal connection between her complaint about

20  Jones and her separation from employment.  Plaintiff has provided no testimony and furnished no

21  documents that suggest retaliatory intent for her separation from employment.  Therefore, Plaintiff

22  cannot establish a prima facie case of retaliation even with respect to her termination.

23       **3.    Defendants Have Articulated A Legitimate, Non-Retaliatory Reason For
               The Termination Of Plaintiff's Employment.**
24

25       Even if Plaintiff were able to make a sufficient prima facie showing of retaliation

26  (which Defendants dispute) based solely on her termination, Defendants have articulated a

27  legitimate, non-discriminatory reason for her termination.  Specifically, Plaintiff was terminated due

28  to missing substantial amounts of work as a no-call/no-show and for ignoring two requests to meet

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

31                                    Case No.  4:18-cv-01402-PJH

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   with Human Resources to discuss her conduct and her concerns.

2          Following Plaintiff's early departure on February 24, 2017, she was a no-call/no-

3   show for several weeks.  She ignored requests to appear at a special meeting with Service West's

4   former Vice President of Human Resources Jennifer Farinha, and her newest supervisor, Clifton

5   Barnes, on March 17, 2017.  She then was a no-call/no-show for her next three scheduled days of

6   work on March 20, 21, and 22, 2017.  (DeLeon Decl. ¶ 19, Exh. K.)

7          Farinha then sent a letter to Plaintiff to re-set the meeting for March 29, 2017.

8   (Farinha Decl. ¶ 9, Exh. D.)  She documented Plaintiff's additional absences, and expressly stated

9   that if Plaintiff failed to attend the March 29 meeting, Rudolph & Sletten would conclude that

10  Plaintiff was abandoning her employment.  (Farinha Decl. ¶ 9, Exh. D.)  Plaintiff then missed her

11  next scheduled days of work on March 23, 24, 27, 28, and 29, 2017.  (DeLeon Decl. ¶ 19, Exh. K.)

12  On March 29, 2017, Plaintiff failed to appear for the scheduled meeting.  (Farinha Decl. ¶¶ 10-11,

13  Exh. E.)

14         Due to numerous work absences and her continued failure to communicate as to

15  whether she intended to return to work, on or around April 3, 2017, Plaintiff's employment was

16  terminated for job abandonment.  (Jacobs Decl. ¶¶ 16-17, Exh. C.)

17         Plaintiff's repeated no-call/no-shows and her failure to appear at not one, but *two*,

18  scheduled meetings with Human Resources constitute a legitimate, non-discriminatory basis for the

19  termination of her employment.

20      **4.    Plaintiff Cannot Establish That Defendants' Proffered Reason For Her
               Termination Is Pretext.**

21

22         Because Defendants have provided a legitimate reason for terminating Plaintiff's

23  employment, Plaintiff must produce "specific and substantial evidence" that the proffered reason is a

24  pretext for retaliation.  *Nilsson*, 503 F.3d at 954;  *Block v. Solis*, 436 F. App'x 777, 778 (9th Cir.

25  2011).

26         Even assuming Plaintiff can establish a *prima facie* case, which she cannot, she must

27  still produce specific, concrete evidence demonstrating that the asserted reasons for Defendants'

28  actions were merely pretext for retaliation.  She cannot do so.  Plaintiff has no evidence, aside from a

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco CA  94104
415 433 1940

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   grave sense of injury and wild speculation, that Defendants' stated reasons for her termination are

2   pretextual.  In the absence of any such evidence, her claim for retaliation fails, and the Court should

3   grant summary judgment on this cause of action.

4   **E.     Because Plaintiff Cannot Demonstrate Defendants Acted With Malice Or
           Reckless Indifference Towards Her, And Because Defendants Made Good Faith
5          Efforts To Comply With Title VII, Plaintiff's Punitive Damages Claim Fails.**

6          Punitive damages are only available under Title VII when the actionable harassment

7   was conducted "with malice or with reckless indifference to the federally protected rights" of the

8   plaintiff.  *See* 42 U.S.C. § 1981a(b)(1).  Malice is defined as "the intent to harm," while "reckless

9   indifference" is defined as "serious disregard for the consequences of one's actions."  *Splunge v.*

10  *Shoney's, Inc.*, 97 F.3d 488, 491 (11th Cir. 1996).  The terms "malice" and "reckless indifference"

11  refer to "the employer's knowledge that it may be acting in violation of federal law."  *Kolstad v.*

12  *American Dental Ass'n*, 527 U.S. 526, 535 (1999).  However, even if malice or reckless indifference

13  is demonstrated, "an employer may not be vicariously liable for the discriminatory employment

14  decisions of managerial agents where these decisions are contrary to the employer's good-faith

15  efforts to comply with Title VII."  *Id.* at 545.  Employers may meet the Supreme Court's "good

16  faith" standard by adopting anti-harassment policies and educating their employees on the

17  prohibitions against harassment and discrimination in the workplace.  *Id.*  ("The purposes underlying

18  Title VII are [] advanced where employers are encouraged to adopt antidiscrimination policies and to

19  educate their personnel on Title VII's prohibitions.")

20         Here, Plaintiff is not entitled to an award of punitive damages because she cannot

21  show that any managerial agent of Defendants acted "with malice or reckless indifference" towards

22  her rights.  First, Plaintiff largely bases her claims on actions undertaken by her coworker Mike

23  Jones.  It is undisputed that Jones was not a managerial agent of Defendants.  (Huie Decl. ¶ 13;

24  DeLeon Decl. ¶ 20.)  With respect to Miller and Marshall, none of the alleged actions exhibit malice

25  or reckless indifference.

26         Even if Plaintiff could show that Marshall or Miller acted maliciously or with

27  reckless disregard (which Defendants adamantly dispute), her claim for punitive damages still fails

28  because Defendants made good-faith efforts to comply with Title VII.  Defendants maintain strict

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

33.                    Case No.  4:18-cv-01402-PJH

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

policies prohibiting (and designed to prevent) unlawful discrimination, harassment, and retaliation. Defendants have distributed and made these policies accessible to their employees. (Huie Decl. ¶ 3, Exh. A; DeLeon Decl. ¶ 3, Exh. A.) The policies inform employees of the available channels to address and report actual and perceived violations. (Huie Decl. ¶ 3, Exh. A; DeLeon Decl. ¶ 3, Exh. A.) Furthermore, Defendants train their managers and supervisors on the written policies, and charge them with enforcement. (Huie Decl. ¶ 4; DeLeon Decl. ¶ 4.) Cumulatively these facts demonstrate that Defendants have made good faith efforts to comply with and enforce anti-discrimination/anti-harassment laws, and punitive damages cannot be applied. Accordingly, summary judgment should be granted as to Plaintiff's punitive damages claim.

## VI.   CONCLUSION

For the foregoing reasons, Defendants Rudolph & Sletten and Service West respectfully request that the Court grant summary judgment (or, in the alternative, partial summary judgment) in their favor on all of Plaintiff's causes of action, and with regard to Plaintiff's request for punitive damages.

Dated:  August 21, 2019

/s/ Kristin E. Hutchins
KRISTIN E. HUTCHINS
DEBORAH O. OLALEYE
LITTLER MENDELSON, P.C.
Attorneys for Defendant
SERVICE WEST, INC.

Dated:  August 21, 2019

/s/ Mark J. Divelbiss
MARK J. DIVELBISS
LAW OFFICES OF MARK J. DIVELBISS
Attorneys for Defendant
RUDOLPH AND SLETTEN, INC.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415 433 1940

34.

Case No.  4:18-cv-01402-PJH
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## SIGNATURE ATTESTATION

In compliance with Local Rule 5-1, I, Kristin E. Hutchins, hereby attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: August 21, 2019

/s/ Kristin E. Hutchins
KRISTIN E. HUTCHINS
DEBORAH O. OLALEYE
LITTLER MENDELSON, P.C.
Attorneys for Defendant
SERVICE WEST, INC.

FIRMWIDE:165913075.2 008333.1015

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

35.

Case No. 4:18-cv-01402-PJH

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF