1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

GEORGETTE G. PURNELL,

        Plaintiff,

   v.

RUDOLPH AND SLETTEN INC.,

        Defendant.

Case No. 18-cv-01402-PJH

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 117

      Defendants Rudolph and Sletten, Inc.'s ("defendant Rudolph & Sletten") and Service West, Inc.'s ("defendant Service West") (collectively, "defendants") motion for summary judgment came on for hearing before this court on September 25, 2019. Pro se plaintiff Georgette G. Purnell ("plaintiff") filed an opposition to the motion but failed to appear at the hearing. Defendants appeared through their counsel, Mark Divelbiss and Kristin Hutchins. At the court's request, defendants filed supplemental briefing concerning plaintiff's employment discrimination claims on October 22, 2019 (Dkt. 152), which plaintiff subsequently responded to on November 12, 2019 (Dkt. 159). Having read the papers filed by the parties and carefully considered their argument, proffered evidence, and relevant legal authority, and good cause appearing, the court hereby **GRANTS** defendants' motion for summary judgment for the reasons stated below.

## BACKGROUND

      On August 21, 2019, defendants filed this combined motion for summary judgment or, in the alternative, partial summary judgment. In it, defendants purport to challenge "each and all [] causes of actions" brought by plaintiff in both Purnell v. Rudolph & Sletten, Inc. (18-cv-1402) and Purnell v. Service West, Inc. (18-cv-1404), which this court

consolidated on January 9, 2019.[1]  While not crisply stated in her first amended complaint

("FAC"), plaintiff appears to allege claims under Title 42 U.S.C. § 2000e-2, *et. seq.* ("Title

VII") for discrimination, retaliation, and hostile workplace.  Plaintiff premises her claims

upon her race, sex, and national origin.

### A.    Undisputed Facts

Defendant Service West is a privately-owned interior construction company.  Dkt.

121 ¶¶ 1-2.  Defendant Rudolph & Sletten is a general contracting firm.  Dkt. 124 ¶¶ 1-2.

Defendant Rudolph & Sletten served as the general contractor on the "AC2" project.  Id. ¶

5.  Plaintiff began working for defendant Service West as a drywall apprentice on the AC2

project in Cupertino on June 13, 2016.  Dkt. 138 ¶ 3; Dkt. 121 ¶¶ 5, 8, Ex. B.  At the time

of her hire, plaintiff received a copy of Service West's employee handbook, and signed a

form acknowledging its receipt.  Dkt. 121 ¶ 9, Ex. C.  Plaintiff is an African-American

woman of Haitian descent.  Dkt. 138 ¶ 4.

In August 2016, defendant Service West's non-supervisory employees working on

the AC2 project were transferred to Rudolph & Sletten's payroll and became employees

of defendant Rudolph & Sletten.  Dkt. 121 ¶¶ 14-15.  Defendant Service West

supervisors continued to manage such employees, including plaintiff.  Id. ¶¶ 14-16; Ex. H;

Dkt. 124 ¶ 6.  Once hired by defendant Rudolph & Sletten, plaintiff received a copy of the

company's "Harassment, Discrimination and Retaliation Prevention Policy" (the "Rudolph

& Sletten Harassment Prevention Policy") and signed a form acknowledging its receipt.

Dkt. 124 ¶ 7, Ex. B.  Plaintiff remained an employee with defendant Rudolph & Sletten

until the time of her employment termination.  Id. ¶¶ 8-9.

On July 6, 2016, plaintiff received a verbal warning for arriving late to work.  Dkt.

121 ¶ 10, Ex. D.  On August 3, 2016, plaintiff received a written warning for failure to

attend work several other days in late July.  Id. ¶ 11, Ex. E; Dkt. 138 ¶ 3.  On August 15,

2016, plaintiff received another written warning for arriving late.  Dkt. 121 ¶ 12, Ex. F.

---

[1] Unless otherwise specified, all citations to the docket are in reference to Purnell v.
Rudolph & Sletten, Inc., 18-cv-1402.

1    In late July or early August 2016, plaintiff was reassigned to a different area of the

2    AC2 Project.  Dkt. 138 ¶ 4.  Michael Jones ("Jones"), another employee of defendant

3    Rudolph & Sletten, also worked in that area of the project.  Id. ¶ 4.  Following her

4    reassignment, plaintiff and Jones engaged in verbal conflict.  Id. ¶ 5; Dkt. 118 ¶ 2, Ex. A.

5    On January 5, 2017, Jones complained to defendant Rudolph & Sletten's human

6    resources department about an incident with plaintiff, whereby plaintiff purportedly took

7    gloves from a work box.  Dkt. 118 ¶ 2, Ex. A.  On January 12, 2017, plaintiff met with

8    defendant Rudolph & Sletten human resources personnel, Julie Jacobs, to discuss this

9    incident; at that time, plaintiff complained about Jones' comments on the job site referring

10   to her sex and race.  Id. ¶¶ 1, 4; Dkt. 138 ¶ 5.  Following that complaint, Jacobs initiated

11   an investigation into Jones' purported conduct.  Dkt. 118 ¶ 6; Dkt. 120 ¶ 2.  Jacobs

12   concluded that Jones engaged in making inappropriate racial comments, including

13   statements that he was "proud to be racist" and use of the word "nigger" toward plaintiff

14   during an after-work party among employees.  Dkt. 118 ¶ 7, Ex. B.  Jones was forced to

15   engage in an anti-harassment training course and plaintiff was not.  Dkt. 137 at 6;[2] Dkt.

16   118 ¶ 9.

17   Following the investigation, plaintiff and Jones were assigned to different work

18   areas and teams; however, for a single day, on February 24, 2017, plaintiff and Jones

19   were assigned to work on the same section of the project.  Dkt. 137 at 6; Dkt. 120 ¶ 3.

20   They encountered one another that day.  Id.  After the encounter, Jacobs  told plaintiff

21   she could leave for the day.  Dkt. 137 at 6; Dkt. 118 ¶ 13.

22   Following that departure, plaintiff did not return to work.  Dkt. 118 ¶ 14.  More than

23   a month later, in either late March or early April 2017, plaintiff was terminated from her

24   employment.  Dkt. 138 ¶ 13; Dkt. 118 ¶¶ 16-17, Ex. C.

25

26

27   _____
[2] Given plaintiff's pro se status, the court will generously consider as proffered evidence
28   both the factual statements made by plaintiff in her declaration (Dkt. 138), as well as
     those in her opposition briefing (Dkts. 137, 159).

### B. Procedural Posture

On December 26, 2017, the EEOC dismissed plaintiff's charge and issued plaintiff a right-to-sue letter. Dkt. 14 at 21. Plaintiff initiated both Purnell v. Rudolph & Sletten, Inc. (18-cv-1402) and Purnell v. Services West, Inc. (18-cv-1404) on March 2, 2018. On January 9, 2019, following a joint stipulation by the parties, the court ordered these cases consolidated for all purposes and that they proceed jointly under the caption and case number Purnell v. Rudolph & Sletten Inc., (18-cv-1402). Dkt. 64. The allegations in the operative complaints in both actions are materially similar. However, plaintiff's FAC in Purnell v. Rudolph & Sletten, Inc. provides exhibits that further detail defendants' alleged wrongdoing. For purpose of resolving this motion, the court will generously treat such exhibits as evidence proffered by plaintiff.

### C. Operative Allegations

In her FAC, plaintiff alleges that defendant Rudolph & Sletten discriminated against her in violation of Title VII by terminating her on the basis of her race, sex, and national origin. Dkt. 14 at 2 ("Exhibits A and B attached will disclose the following facts where defendants discriminated and/or caused discrimination to take effect upon plaintiff where plaintiff was wrongfully terminated without reasons based upon plaintiff's race . . . sex . . . and national origin in violation of Title VII of the Civil Rights Act of 1964"). Exhibit A of the FAC includes a table detailing multiple meeting notes written by plaintiff's supervisors and union representatives concerning their investigation into incidents between plaintiff and Jones. Dkt. 14 at 7-14. Exhibit A also includes a series of plaintiff's timesheets, detailing the number of hours she had worked for select weeks between September 2016 and February 2017. Dkt. 14 at 15-20.

Further, in the charge filed by plaintiff with the EEOC on June 20, 2017, plaintiff adds a claim for harassment, Dkt. 14 at 24 ("I believe I was harassed because of my race . . . because of my national origin . . . and because of my sex . . . in violation of Title VII of the Civil Rights Act"), as well as a claim for retaliation, id. ("I believe I was subjected to different terms and conditions of employment, disciplined, and discharged in retaliation

for opposing discrimination in violation of the Title VII of the Civil Rights Act"). Following its 28 U.S.C. § 1915 review, this court found "that the FAC states a claim under Title VII of the Civil Rights Act of 1964." Dkt. 16.

## DISCUSSION

### A. Legal Standard

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. "A 'scintilla of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,' is not sufficient to present a genuine issue as to a material fact." United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989) (citation omitted).

Courts recognize two ways for a moving defendant to show the absence of genuine dispute of material fact: (1) proffer evidence affirmatively negating any element of the challenged claim or (2) identify the absence of evidence necessary for plaintiff to substantiate such claim. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000) ("In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."). Rule 56(c)(1) expressly requires that, to show the existence or nonexistence of a disputed fact, a party must "cit[e] to particular parts of materials in the record." Fed. R. Civ. Pro. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory

answers, or other materials.").

"Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or by the depositions, answers to interrogatories, and admissions on file, come forth with specific facts to show that a genuine issue of material fact exists." Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993) (per curiam). When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." Id.[3]

The court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. Tolan v. Cotton, 134 S. Ct. 1861, 1865 (2014); Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). However, when a non-moving party fails to produce evidence rebutting defendants' showing, then an order for summary adjudication is proper. Nissan Fire, 210 F.3d at 1103 ("If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment.")

Lastly, the Ninth Circuit recognizes that "an ordinary pro se litigant, like other litigants, must comply strictly with the summary judgment rules." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (citation omitted); Chan v. Ramada Plaza Hotel, 2003 WL 22159061, at *3 (N.D. Cal. Sept. 12, 2003) ("It is here noted that [pro se] plaintiff was given every opportunity to meet his burden on summary judgment.").

---

[3] Defendants identify the sham affidavit doctrine as potentially applicable here. Dkt. 139 at 3. However, district courts should strike a subsequent contradiction by declaration with caution and only after determining that it is "clear and unambiguous." Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony. . . . But the sham affidavit rule should be applied with caution . . . to trigger the sham affidavit rule, the district court must make a factual determination that the contradiction is a sham, and the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit."). Shown below, the court need not consider that doctrine to grant this motion.

**B.    Analysis**

Discrimination and retaliation claims brought under Title VII are subject to a unique burden-shifting analysis.  Surrell v. California Water Serv. Co., 518 F.3d 1097, 1105 (9th Cir. 2008) ("Typically, we apply the familiar McDonnell Douglas burden shifting framework for Title VII and § 1981 claims.").  Under McDonnell Douglas, a plaintiff must first prove a prima facie case of discrimination or retaliation.  Surrell, 518 F.3d at 1105 ("Under this framework, the plaintiff first must establish a prima facie case of discrimination or retaliation.").  The Ninth Circuit has emphasized that "the degree of proof necessary to establish a prima facie case is minimal and does not even need to rise to the level of a preponderance of the evidence."  Dominguez-Curry v. Nevada Transp. Dep't, 424 F.3d 1027, 1037 (9th Cir. 2005).

If met, the employer then must articulate a legitimate non-discriminatory reason for its challenged employment decision.  Vasquez v. County of Los Angeles, 349 F.3d 634, 640 ("If the plaintiff succeeds in doing so, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct.").

If the employer does so, "[t]he plaintiff then must produce sufficient evidence to raise a genuine issue of material fact as to whether the employer's proffered nondiscriminatory reason is merely a pretext for discrimination. . . .The plaintiff may show pretext either (1) by showing that unlawful discrimination more likely motivated the employer, or (2) by showing that the employer's proffered explanation is unworthy of credence because it is inconsistent or otherwise not believable."  Dominguez-Curry, 424 F.3d at 1037.  A plaintiff may make such a showing by producing either direct evidence of discriminatory motive, which need not be substantial, or circumstantial evidence that is "specific and substantial evidence of pretext."  Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221-22 (9th Cir. 1998).  "Direct evidence is evidence, which, if believed, proves the fact of discriminatory animus without inference or presumption," and it "typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer."  Dominguez-Curry, 424 F.3d at 1038.  If the plaintiff succeeds in

7

demonstrating a genuine issue of material fact as to whether the reason advanced by the employer was a pretext for discrimination, then the case proceeds beyond the summary judgment stage. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000).

Unlike its discrimination and retaliation counterparts, claims under Title VII for a hostile work environment are subject to ordinary principles of summary judgment review. Fuller v. Idaho Dep't of Corr., 865 F.3d 1154, 1161 (9th Cir. 2017), cert. denied sub nom. Idaho Dep't of Correction v. Fuller, 138 S. Ct. 1345, 200 L. Ed. 2d 514 (2018) ("We recently explained in a case involving a hostile work environment claim that 'what is required to defeat summary judgment is simply evidence such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor.'"). The court will first analyze the hostile work environment claim.

### 1. Summary Adjudication of Plaintiff's Hostile Work Environment Claims Is Appropriate

Title VII's prohibition on discrimination "extends to the creation of a hostile work environment." Fuller, 865 F.3d at 1161. An employee establishes a prima facie claim for a hostile work environment only if the employee can show that he or she (1) was subjected to verbal or physical conduct because of a protected trait, (2) this conduct was unwelcome, and (3) this conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Campbell v. Hawaii Dep't of Educ., 892 F.3d 1005, 1016 (9th Cir. 2018). In addition to making an objective showing that her work environment was sufficiently severe or pervasive, an employee must also show that she subjectively perceived such environment as abusive. Id. at 1017 ("The work environment must be both subjectively and objectively perceived as abusive.").

To determine whether conduct was sufficiently severe or pervasive to violate Title VII, courts in the Ninth Circuit "consider all circumstances, with a particular focus on issues such as the frequency and severity of the conduct, whether the conduct was

physically threatening or humiliating, and the extent to which it unreasonably interfered with [the employee's] work performance." Campbell, 892 F.3d at 1017.

The Ninth Circuit in Manatt v. Bank of America considered whether an employee's continuous exposure to racially derogatory comments from co-workers about her Chinese ancestry qualified. 339 F.3d 792 (9th Cir. 2003). The court examined that, on several instances at the office, her co-workers referred to her as a "China-man" or "China woman," held their hands to their face tilting their eyes "in an attempt to imitate or mock the appearance of Asians," and forced her to say a word that they knew she would mispronounce for purpose of causing her embarrassment. Id. at 795-96. The Ninth Circuit held that it did not. Id. at 798. It found that the workplace conduct, "while offensive and inappropriate, did not so pollute the workplace that it altered the conditions of her employment." Id. Instead, the Ninth Circuit reasoned, such conduct fell into the non-actionable category of "simple teasing," "offhand comments," and "isolated incidents," id. at 798, and was therefore "neither severe nor pervasive enough to alter the conditions of [the employee's] employment," id.

Even if a hostile work environment is shown, a claim against the employer for such environment is cognizable only if the employee establishes that the employer is liable for the harassment that caused the hostile work environment. Fuller, 865 F.3d at 1161 ("To prevail on a hostile work environment claim, an employee must show that her employer is liable for the conduct that created the environment."). "Where harassment by a co-worker is alleged, the employer can be held liable only where its own negligence is a cause of the harassment." Swenson v. Potter, 271 F.3d 1184, 1191 (9th Cir. 2001). "If the employer fails to take corrective action after learning of an employee's sexually harassing conduct, or takes inadequate action that emboldens the harasser to continue his misconduct, the employer can be deemed to have adopted the offending conduct and its results, quite as if they had been authorized affirmatively as the employer's policy." Id. at 1192. Once an employer has notice of harassing conduct, it has a "duty to take prompt corrective action that is reasonably calculated to end the harassment." Id. Such

reasonable calculation does not require perfection, <u>Campbell</u>, 892 F.3d at 1018 ("More fundamentally, our law does not require an employer to be immediately and perfectly effective in preventing all future harassment by a third party"), and an employer's immediate initiation of an investigation into the harassment is significant, <u>id.</u> ("the most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified"). Additionally, while an employer may need to "escalate to more aggressive disciplinary measures" if lesser measures prove ineffective, "sometimes counseling or formally warning the perpetrator may be a sufficient response if the circumstances suggest that such action is reasonably expected to end the problem." <u>Id.</u>

Here, defendants do not dispute that plaintiff was subjected to verbal conduct because of her ethnicity as an African American or that the racial slurs she suffered were unwelcome. The issues, then, are whether plaintiff showed that (1) the hostile conduct she suffered was "sufficiently severe or pervasive" and (2) whether defendants may be held liable for such conduct. Analyzed below, plaintiff demonstrated a triable issue of fact that she endured a hostile work environment, but, because of the uncontested evidence showing that defendants promptly remediated Jones' conduct toward plaintiff, plaintiff failed to show that defendants may be held liable for a hostile work environment claim.

          **a.**     **Plaintiff Proffered Sufficient Evidence of a Hostile Work Environment**

Plaintiff demonstrated a triable issue of fact that the hostile conduct she suffered was sufficiently severe and pervasive. With respect to racially derogatory remarks, plaintiff testifies that she publicly endured epithets by Jones "to the tune of calling [her] a black bitch." Dkt. 138 ¶¶ 5, 7-8, 11. With respect to sex-based derogatory remarks, plaintiff conclusively states in an exhibit to her declaration that she was moved from "crew to crew so that boys can pick at [her]." Dkt. 138 at 7. More significantly, as Exhibit A of her FAC, plaintiff attaches what appears to be a set of internal notes by defendants' human resources department memorializing numerous specific instances of race- and

United States District Court
Northern District of California

gender-based hostile statements toward plaintiff. Defendants do not expressly contest such statements, which include the following:

- Jones told plaintiff "you're black and using it your advantage." Dkt. 14 at 7.

- At a December 4, 2016 after-work party, Jones told plaintiff "You're a Nigger, You're a Nigger, You're a Nigger. I'm a proud bigot and a proud racist." Id.

- After plaintiff purportedly got into a fight with a third-party at a bar, Jones bragged that plaintiff "was arrested and [he] helped hold her down." Id.

- At the same December 4, 2016 after-work party, Jones told plaintiff, "You're a nigger and you people think we owe you something. You're milking it pulling through the trade because your black." Id.; Dkt. 118, Ex. B.

- At the beginning of work each day, Jones regularly says "I'm a proud bigot." Dkt. 14 at 8; Dkt. 118, Ex. B.

- Jones told plaintiff "you stand out." Dkt. 14 at 7.

- Jones told plaintiff "women don't belong on the job site." Id.; Dkt. 118, Ex. B.

- After seeing plaintiff on her phone while everyone else worked, Jones told plaintiff "she pulled the female card on that one." Dkt. 14 at 10.

- Around November 2017, Jones told plaintiff "oh baby, oh baby." Id.

Here, if true, the racial epithets endured by plaintiff are reprehensible. The term "nigger" carries a distinct sense of oppression deeply rooted in our country's history. The sex-based comments, particularly the term "bitch" (much less any suggestion that a woman does not "belong" in some line of employment) amplify the hostility plaintiff faced in her work environment. While the court appreciates that showing a hostile work place is a high bar—particularly under the sort of racist remarks and conduct considered in Manatt v. Bank of America 339 F.3d 792 (9th Cir. 2003), it finds that the above race- and sex-based comments applied to a woman of color working in the construction industry qualify as sufficient evidence to show a triable issue of fact that plaintiff suffered the sort of "sufficiently severe and pervasive" conduct necessary to substantiate a claim for hostile work environment.

1  **b.    Plaintiff Failed to Proffer Sufficient Evidence that Defendants**

2  **May Be Held Liable for the Hostile Conduct**

3      Here, plaintiff failed to show a triable issue of fact that defendants failed to

4  promptly correct the hostile conduct plaintiff purportedly endured.  On that score,

5  plaintiff's strongest piece of evidence is her statement that several supervisors were

6  present during Jones' "escalation of the racial behavior."  Dkt. 138 ¶¶ 10-11.  Plaintiff's

7  remaining statements on this point only conclusively state that she made numerous

8  complaints to her supervisors and that all were ignored.  Id. ¶¶ 7-9, 12, 13.[4]

9      Defendants provided evidence showing that human resources took disciplinary

10 action against Jones soon after plaintiff's complaint about his racial slurs was brought to

11 its attention.  Dkt. 124 ¶ 14, Exh. D; Jacobs Decl. ¶ 9.  Plaintiff's own declaration confirms

12 that event.  Dkt. 138 ¶ 6.  Plaintiff's statement about Jones' escalated racial behavior

13 does ***not*** specify whether such behavior (in the presence of her supervisors) occurred

14 before or after defendant Rudolph & Sletten's discipline of Jones.  Additionally, as part of

15 the supervisor notes attached to plaintiff's FAC, plaintiff provided evidence suggesting

16 that, prior to human resources' formal disciplinary action against Jones, a supervisor

17 talked to a separate employee concerning use of the word "baby" and told such

18 employee not to use that term and to refer to his coworkers only by their name.  Dkt. 14

19 at 14 ("[Superintendent] Thai [Doan] talked to Nash and told him to only address people

20 by their names and not to call anyone 'baby.'").[5]  Given the above, and in the absence of

21 any evidence to the contrary, plaintiff cannot show that, when put on notice, defendants

22 failed to take prompt corrective action to address the hostile conduct at issue.

23

24 [4] The internal notes at Exhibit A of the FAC (Dkt. 14 at 11-14) refer to a handful of
   instances when other personnel of defendants were purportedly present during certain
25 discriminatory behavior; however, such references do not specify the timing of such
   purported misconduct or the exact titles of any management actually present.  In any
26 event, plaintiff fails to cite or otherwise explain how such notes show a triable issue of
   fact on this element.
27 [5] That same attachment similarly shows that a supervisor "handled" Jones' separate
   statement concerning deportation of defendants' Hispanic employees.  Dkt. 14 at 14
28 ("Thai says Cipriano told him about the comment ["about Mexicans around the time of the
   election"] ***and that Cipriano handled it***.") (emphasis added).

1    Moreover, plaintiff does not contest defendants' assertion that, following the

2    investigation, plaintiff and Jones were assigned to different work stations.  Dkt. 120 ¶ 3.

3    Plaintiff also does not contest that, except for a brief encounter her last day at the jobsite,

4    neither Jones nor plaintiff reported any further incidents involving one another.  Dkt. 118

5    ¶ 10.  Given that plaintiff has offered no evidence showing that the racial slurs by Jones

6    continued **after** such discipline and the only evidence in the record on this point suggests

7    that such slurs did not, plaintiff failed to show that defendants may be held liable for

8    Jones' conduct.  Because plaintiff failed to show that defendants may be held liable for

9    the hostile conduct she purportedly suffered (particularly as inflicted by Jones), the court

10   finds that summary adjudication of plaintiff's hostile work environment claim is proper.

11       **2.    Summary Adjudication of Plaintiff's Discrimination Claims Is**

12            **Appropriate**

13       Title VII provides a cause of action for certain employment-related discrimination

14   based on a protected trait. To establish a prima facie case of discrimination, a plaintiff

15   must allege that (1) she is a member of a protected class; (2) she was qualified for her

16   position and performing her job satisfactorily; (3) she experienced an adverse

17   employment action; and (4) similarly situated individuals outside her protected class were

18   treated more favorably, or other circumstances surrounding the adverse employment

19   action that give rise to an inference of discrimination.  Hawn v. Exec. Jet Mgtm., Inc., 615

20   F.3d 1151, 1156 (9th Cir. 2010).

21            **a.    Plaintiff Failed to Establish a Prima Facie Claim for**

22                 **Discrimination**

23       Here, plaintiff alleges discrimination on three distinct bases: race, sex, and

24   national origin.  With respect to stating a prima facie claim under any such basis,

25   defendants challenge only plaintiff's ability to show that (1) she was qualified for her

26   position and performing her job satisfactorily and (2) similarly situated individuals outside

27   the protected class were treated more favorably.

28       Here, under any proffered basis (race, sex, or national origin), plaintiff failed to

13

show a prima facie discrimination claim. Significantly, plaintiff failed to provide evidence that she was qualified for her position and had been performing it satisfactorily or that other similarly situated individuals outside her protected classes (African-American, female, Haitian descent) were treated more favorably.

### i. Plaintiff Failed to Present Evidence that She Performed Her Job Satisfactorily at the Time of Any Demotion or Termination

"Although the requisite level of proof necessary for a plaintiff to establish a prima facie Title VII case at the summary judgment stage is minimal and does not even need to rise to the level of a preponderance of the evidence," a plaintiff "still must produce evidence, not just pleadings or argument." Weil v. Citizens Telecom Servs. Co., LLC, 922 F.3d 993, 1003 (9th Cir. 2019). Recently, for purpose of establishing a prima facie discrimination claim, the Ninth Circuit ruled that "[a]n employee's self-assessment of his performance, though relevant, is not enough on its own to raise a genuine issue of material fact." Id.

Here, plaintiff presented evidence demonstrating that she was qualified for her job; however, all such evidence were self-assessments by plaintiff. In her supplemental opposition, plaintiff argues that she was qualified and performing her job satisfactorily because "just 2 months before her termination, plaintiff was promoted from an installer to that of a Quality Control Personell [sic] by Managers Dave Ehampenez, and Paula Sakukuka." Dkt. 159 at 2. In her FAC, plaintiff attaches a letter to an unspecified recipient stating that, prior to her interaction with Jones, she "was climbing up in management rerated to a 3rd period within 2-3 months because of all the overtime and double time I was committing to every single week it was offered." Dkt. 14 at 5. In her charge of discrimination letter from the Equal Employment Opportunity Commission ("EEOC"), plaintiff states "[o]n or about June 13, 2016, I was hired as Drywall/Inspector and was subsequently promoted to Quality Control Management." Dkt. 14 at 24.

Each of these statements concerning her prior promotions was made by plaintiff.

1    While these statements do go to show that plaintiff had some record of adequately

2    performing her responsibilities, each effectively amounts to a "self-assessment," which,

3    without more, is insufficient to satisfy the second prong of a discrimination claim.

4        In any event, plaintiff's proffered self-assessments concern only her performance

5    in her prior role as an installer. Her assessments are noticeably silent about her

6    performance as a member of the Quality Control Management team. Aside from these

7    self-assessments, plaintiff fails to identify any other evidence showing that she was

8    qualified for her job and had been performing it satisfactorily, either at the time of her

9    termination or any purported demotion. Indeed, as further discussed below, defendants

10   proffered substantial evidence of job abandonment affirmatively negating any such

11   showing.   Significantly, such evidence shows that plaintiff failed to appear for work (or

12   otherwise call-in her absence) for eight scheduled shifts in near consecutive order

13   immediately prior to her termination. Dkt. 118 ¶ 14; Dkt. 121 ¶ 19, Ex. K. (internal

14   employee incident report showing plaintiff's "no call no-show" status for March 20-24 and

15   March 27-29). Unrebutted by plaintiff, such evidence effectively bars her ability to

16   establish a prima facie showing of adequate job performance. As a result, summary

17   judgment of plaintiff's discrimination claim is proper on this ground alone.

18           ii.     **Plaintiff Failed to Present Evidence of a Similarly Situated**

19                   **Employee Who Experienced Favorable Treatment**

20       To make a prima facie showing of the fourth prong of a discrimination claim, a

21   plaintiff must offer evidence of a comparable employee outside her protected class who is

22   otherwise similarly situated in all material respects, including similar jobs and conduct.

23   Weil, 922 F.3d at 1004 ("Weil also failed to meet the fourth element. It is not enough for

24   employees to be in similar employment positions; rather, the plaintiff and the comparator

25   employee must be "similarly situated ... in all material respects."). "Employees are

26   similarly situated if they have similar jobs and display similar conduct." Id.

27       Here, plaintiff failed to identify any evidence of a similarly situated employee

28   outside her protected class who displayed similar conduct, much less one treated more

15

favorably.  To the contrary, plaintiff presented evidence that defendants imposed equal expectations concerning workplace civility upon her and other employees outside her protected class.  Dkt. 14 at 7 (attaching defendant supervisor notes stating "I told [plaintiff] that the expectation is that everyone acts professionally and politely and admonished her to not use profanity.  (I called Mike Jones and told him the same thing . . . be professional until the matter is concluded).").  As a result, summary judgment of plaintiff's discrimination claim is proper on this ground as well.

> ### b. Defendants Proffered a Legitimate Non-Discriminatory Reason for Plaintiff's Termination

Here, defendants proffered a legitimate non-discriminatory reason to terminate plaintiff—namely, plaintiff abandoned her job.  To substantiate this justification, defendants outline the following timeline between plaintiff's last workplace appearance and termination, as well as such timeline's supporting evidence:

- The last day that plaintiff appeared for work was February 24, 2017.  Dkt. 118 ¶ 14.

- After such appearance, plaintiff missed eight near consecutive scheduled and required days of work without notice or explanation.  Dkt. 118 ¶ 14; Dkt. 121 ¶ 19, Ex. K.

- Defendants contacted plaintiff on several occasions and twice arranged for her to have a meeting with human resources.  Dkt. 120 ¶¶ 6-10, Ex. B-D (letter and internal emails memorializing intent to contact or actual contact with plaintiff).  Plaintiff failed to attend either March 17, 2017 or March 29, 2017 meeting.  Dkt. 120 ¶¶ 7, 10, Ex. D (letter to plaintiff memorializing plaintiff's failure to attend March 17, 2017 meeting) and Ex. E (internal email memorializing plaintiff's failure to attend March 29, 2017 meeting).

- On March 22, 2017, defendant Service West sent plaintiff a letter stating that plaintiff's three no-call/no-shows (as of that date) were "unacceptable" and attempted to schedule a meeting with her on March 29, 2017.  Dkt. 120

¶ 9, Ex. D.  The letter further advised plaintiff that if she missed the scheduled March 29, 2017 meeting, defendant Service West would consider such absence a voluntary resignation.  Dkt. 120 ¶ 9, Ex. D.

- Plaintiff failed to attend the March 29, 2017 meeting.  Dkt. 120 ¶ 9.
- Following the March 22, 2017 letter, plaintiff missed an additional five scheduled works days.  Dkt. 121 ¶ 19.

This sequence of events is consistent with plaintiff's own recognition in her EEOC charge of discrimination that "I was told I was discharged because I missed a meeting. ***No other reason was given***."  Dkt. 14 at 24 (emphasis added).

Plainly, there is nothing inherently discriminatory about terminating an employee because she abandoned her job.  Such action serves a fair business interest and, as the above sequence of events reflect, was the reasonable result of failures by plaintiff to attend work or other required meetings.  Given that, defendants have shown that their proffered justification for plaintiff's termination—that she abandoned her job—is legitimate and nondiscriminatory.  Given such showing, plaintiff may not maintain a discrimination claim unless she demonstrates that defendants' proffered justification served as a pretext for their alleged unlawful discrimination.

### c.  Plaintiff Failed to Proffer Evidence Showing that Defendants' Justification Was Pretext for Discrimination

Here, plaintiff failed to produce any evidence showing that defendants' proffered justification for her termination was a pretext for unlawful discrimination.  Instead, with respect to defendants' proffered reason, plaintiff provides only her testimony concerning two related but distinct topics.

First, plaintiff testifies that she was unaware of the scheduled meetings that defendants base their legitimate nondiscriminatory justification upon.  In particular, plaintiff testifies to the following:

> "Following her complaints to defendants concerning Jones' conduct, "[t]he next thing I knew was I was terminated with reasons that I was a no show for a few meetings which I knew

> for a certainty that I was never made aware of, neither by mail, email, nor phone, nevertheless these vehicles were contained in my employment files." Dkt. 138 ¶ 12.

This statement fails to show how plaintiff's termination for job abandonment qualifies as a pretext for the alleged unlawful discrimination. Plainly, it provides no direct evidence of any racial-, sex-, or national origin-based animus by defendants. While plaintiff's testimony does call into question the veracity of defendants' proffered justification (i.e., that, despite defendants' attempted to reach out but plaintiff ignored them, therefore giving them ground to believe that she abandoned her job), such a question does not serve as any circumstantial evidence of improper discriminatory intent. At best, it creates a dispute of fact of whether defendants actually contacted her, but plaintiff provides no authority to support the position that showing such dispute satisfies her burden under the McDonnell Douglas framework.

In any event, even accepting plaintiff's version of the story (i.e., that defendants never informed plaintiff about the required attendance that formed the purported basis for her termination), plaintiff provides no reason to suggest that such a failure by defendants arose from their intent to discriminate against her on the basis of race, sex, or national origin. Moreover, plaintiff's failure to appear for eight scheduled work days—separate and apart from her failure to attend the required meetings—forms the gravamen of her job abandonment. Even if plaintiff did not receive notification of such meetings, plaintiff still fails to provide any explanation for missing work nearly eight days in a row without so much of a phone call.

Second, plaintiff testifies that her termination resulted from her complaints to the employers about Jones. In particular, plaintiff testifies to the following:

> Her termination "resulted from my consistent reports and grievances regarding the hostile workplace . . . [the] supervisors named, were fully aware of these obnoxious acts in contrary defendants reasoning that I had failed to show up for several meetings, absolutely no recourse were offered, nor any suggested, nor taken. I was just told that I was not terminated." Dkt. 138 ¶ 13.
> . . .

18

"[N]evertheless it was indeed the racial discrimination by supervisors named herein above who just stood by, where over my complaints and grievances, completely ignored the tensions I was encountering at the mouth of this Mike Jones. *Such complaints, and grievances was indeed the basis of my termination*." Dkt. 138 ¶ 14.
. . .

"Plaintiff bringing this matter before the court based upon Title VII . . . where all her efforts in reporting such derogatory insults on a continuous basis with regard to and coming from a co-worker, namely Mike Jones, even in the presence of supervisors named in the factual statement, heads were turned, where because of her still continuous efforts in seeking resolution to these unwarranted attacks, she, *contrary to defendants account that she failed to show up for numerous scheduled meetings*, was terminated." Dkt. 137 at 3.

While the above statements may serve as evidence that defendants' proffered justification was a pretext *for retaliation* (addressed below), such statements do not show that such justification was a pretext for discrimination. By stating that her complaints were the basis of her termination, plaintiff undermines any conclusion that race, sex, or national origin discrimination drove defendants to terminate her. Without more, plaintiff failed to show that defendants' proffered legitimate nondiscriminatory justification—that plaintiff abandoned her job—served as a pretext for discrimination. As a result, the court finds that summary adjudication of plaintiff's discrimination claims—whether premised upon race, sex, or national origin—is proper.

**3.    Summary Adjudication of Plaintiff's Retaliation Claims Is Appropriate**

Title VII further provides that it is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). "To establish a claim of retaliation, a plaintiff must prove that (1) the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse employment action, and (3) there was a causal link between the plaintiff's protected activity and the adverse employment action." Poland v. Chertoff, 494

F.3d 1174, 1179-80 (9th Cir. 2007).

### a.      Plaintiff Engaged in a Protected Activity

Here, plaintiff states in her declaration that she repeatedly complained to her supervisors and managers about Jones' hostile conduct. Dkt. 138 ¶¶ 4, 9.  As shown in the hostile work environment analysis section above, such conduct is barred under Title VII.  Defendants do not dispute that plaintiff engaged in a protected activity.  As a result, plaintiff has satisfied her prima facie showing on this element of her retaliation claim.

### b.      Plaintiff Suffered an Adverse Employment Action

"An adverse employment action is any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity."  Chertoff, 494 F.3d at 1180.  "Among those employment decisions that can constitute an adverse employment action are termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion."  Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000).  In contrast, the Ninth Circuit has recognized that adverse employment actions do not include "declining to hold a job open for an employee and badmouthing an employee outside the job reference context."  Id. at 928–29.

Here, plaintiff identified numerous employment decisions that could constitute adverse employment actions.  Such actions include the following: (1) her termination, Dkt. 138 ¶ 12; (2) a demotion, id. ¶¶ 6, 9; and (3) a reduction in her work schedule, id. ¶ 9; Dkt. 14 at 15-20 (six weeks of timesheets between August 27, 2016 and February 18, 2017 showing fluctuating hours worked per week, eventually declining from regular 42 hours/week to 31 hours/week).  While defendants contest any retaliatory intent underlying those decisions, they do not contest that plaintiff was terminated or demoted.  As a result, plaintiff satisfied this element of her prima facie claim for retaliation on the theory of termination and demotion.

However, defendants do contest that plaintiff suffered a reduction in her work schedule.  Defendants provide a near complete record of her timesheets showing that

her overtime hours regularly fluctuated. Dkt. 121 ¶ 13, Ex. G; Dkt. 124 ¶ 9, Ex. C (attaching all timesheets between August 27, 2016 and February 25, 2017, except for the week ending January 21, 2017). Plaintiff failed to contest or otherwise explain any such regular fluctuation. As a result, plaintiff failed to establish her prima facie claim for retaliation on a theory of reduced hours.

        c.     **Plaintiff Failed to Proffer Evidence Showing a Causal Link Between Her Protected Activity and the Adverse Employment Actions**

To establish causation, a plaintiff must show that engaging in the protected activity was one of the reasons for the adverse employment decision and that but-for such activity the decision would not have been made. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1064 (9th Cir. 2002). The causal link may be established by an inference derived from circumstantial evidence, "such as the employer's knowledge that the [plaintiff] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision." Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987). "[W]hen adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred." Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 507 (9th Cir. 2000).

In her declaration, the only evidence that plaintiff provides to link her complaints about Jones' conduct to her termination is a conclusory statement that "[s]uch complaints, and grievances [about Jones' conduct] was indeed the basis of my termination." Dkt. 138 ¶¶ 13-14. Without more, plaintiff cannot show the necessary but-for causation linking her complaints to her termination. With respect to her purported demotion, plaintiff provides only her conclusory statement that "I was demoted, I believe due to the Complaint." Id. ¶ 6. Again, without more, plaintiff cannot show the necessary but-for causation linking her complaints to her demotion. As a result, the court finds that summary adjudication of plaintiff's retaliation claims is proper on this ground alone.

**d.** **Defendants Identified a Legitimate Non-Discriminatory Reason**

**for the Challenged Action, and Plaintiff Failed to Show that**

**Such Reason Was Pretextual**

Even if plaintiff satisfied her prima facie showing of causation, defendants provided substantial evidence of a legitimate non-retaliatory reason for plaintiff's termination— namely, that she effectively abandoned her job by failing to appear for work for nearly eight consecutive days and ignoring two requests to meet with human resources.  Dkt. 121 ¶ 19, Ex. K; Dkt. 120 ¶ 9-11, Ex. D; Dkt. 118 ¶¶ 16-17, Ex. C.  While plaintiff generally asserts that defendants terminated her for her "complaint and grievances," Dkt. 138 ¶ 14, she fails to provide any evidence showing such pretext.  Further, the several month passage of time between plaintiff's complaint concerning Jones' conduct (January 5, 2017) and her ultimate termination (late March/early April 2017) undermines any inference of such pretext.  Villiarimo, 281 F.3d at 1065 ("But timing alone will not show causation in all cases; rather, in order to support an inference of retaliatory motive, the termination must have occurred fairly soon after the employee's protected expression.") (internal citations omitted).  In any event, defendants' undisputed evidence that their human resources department attempted to reach out to plaintiff in March 2017 further undermines any finding of such pretext.  As a result, the court finds that summary adjudication of plaintiff's retaliation claims is similarly proper on this ground alone.

## CONCLUSION

For the foregoing reasons, the court grants defendants' motion for summary on all claims.

**IT IS SO ORDERED.**

Dated: December 20, 2019

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge